## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

| | | |
|---|---|---|
| AMY D. GOMEZ, ADMINISTRATRIX OF THE ESTATE OF STEVEN N. GOMEZ, DECEASED | ) ) ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:19-cv-02412-JPM-tmp** |
| | ) | |
| CITY OF MEMPHIS, TENNESSEE; SHELBY COUNTY, TENNESSEE; OFFICER JOSE FLORES (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY); OFFICER ANTHONY HENDERSON (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY); OFFICER VINCENT MACARAEG (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY); AND LIEUTENANT ROOSEVELT TWILLEY (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY) | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants** | ) ) ) ) ) ) | |

---

## FIRST AMENDED COMPLAINT

---

COMES NOW Plaintiff Amy D. Gomez, Administratrix of the Estate of Steven N. Gomez, Deceased, by and through counsel, and files this First Amended Complaint against Defendants City of Memphis, Tennessee; Shelby County, Tennessee; Officer Jose Flores; Officer Anthony Henderson; Officer Vincent Macaraeg; and Lieutenant Roosevelt Twilley, as follows:

## PARTIES

1.      Plaintiff Amy D. Gomez is the duly appointed Administratrix of the Estate of Steven N. Gomez ("Gomez"), Deceased, which is currently pending before the Chancery Court of Desoto County, Mississippi; Cause No. 18-cv-1627. Plaintiff brings this action on behalf of all wrongful death beneficiaries of Gomez.  Plaintiff is the natural mother of Gomez who died on July 2, 2018 at the age of twenty (20).

2.      Defendant City of Memphis, Tennessee (the "City of Memphis" or the "City") is a duly incorporated municipality under the laws of the State of Tennessee, which can be served with process through Roane Waring, Sr., City Attorney and Chief Legal Officer for the City of Memphis, 125 N. Main Street, Memphis, TN 38103, or wherever he may be found.

3.      Defendant Shelby County, Tennessee is duly incorporated under the laws of the State of Tennessee, and can be served through Marlinee Clark Iverson, County Attorney for Shelby County, 160 N. Main Street, Memphis, TN 38103, or wherever she may be found.

4.      Defendant Memphis Police Department Officer Jose Flores ("Officer Flores"), Badge No. 12031, is an adult resident citizen of Tennessee, and may be served with process at the City of Memphis Police Department, 170 N. Main Street, Memphis, TN 38103, or wherever he may be found.  At all times material hereto, Flores was acting within the scope of his employment and under the color of state law.  Flores is a party in his individual and official capacity.

5.      Defendant Memphis Police Department Officer Anthony Henderson ("Officer Henderson"), Badge No. 13034, is an adult resident citizen of and may be served with process at the City of Memphis Police Department, 170 N. Main Street, Memphis, TN 38103, or wherever he may be found.  At all times material hereto, Henderson was acting within the scope of his employment and under the color of state law.  Henderson is a party in his individual and official

capacity.

6.      Defendant Memphis Police Department Officer Vincent Macaraeg ("Officer Macaraeg"), Badge No. 11570, is an adult resident citizen of Tennessee, and may be served with process at the City of Memphis Police Department, 170 N. Main Street, Memphis, TN 38103, or wherever he may be found.  At all times material hereto, Macaraeg was acting within the scope of his employment and under the color of state law.  Macaraeg is a party in his individual and official capacity.

7.      Defendant Memphis Police Department Lieutenant Roosevelt Twilley ("Lt. Twilley"), Badge No. 505A, is an adult resident citizen of Tennessee, and may be served with process at the City of Memphis Police Department, 170 N. Main Street, Memphis, TN 38103, or wherever he may be found.  At all times material hereto, Twilley was acting within the scope of his employment and under the color of state law.  Twilley is a party in his individual and official capacity.

## JURISDICTION AND VENUE

8.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the matter in controversy is in excess of minimal jurisdictional requirement.

9.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391.

10.     The federal question claims in this action are brought under 42 U.S.C. §§ 1983, 1985, and 1986, together with certain rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

11.     The supplemental state law claims are brought under the Tennessee Governmental Tort Liability Act, Tennessee Code Ann. § 29-20-305.

- 3 -

## FACTS

12.     On June 27, 2018, at approximately 3:20 a.m., Gomez was sitting in a parked vehicle with Antony Crutchfield, Amanda Hill and Elizabeth Horde at 3607 Rockwood Avenue, Memphis, Tennessee (the "subject location"). The vehicle belonged to Amanda Hill.

13.     According to the Memphis Police Department ("MPD"), someone called about 'suspicious persons' at the subject location.

14.     MPD Officers Jose Flores, Badge No. 12031; Anthony Henderson, Badge No. 13034; and Vincent Macaraeg, Badge No. 11570 (the "MPD Officers") responded to the subject location.

15.     Upon arrival at the subject location, the Officers detained and placed Gomez, Crutchfield, Hill and Horde into custody. During his initial search of Gomez, Officer Flores found a methamphetamine pipe in Gomez's shirt pocket and inquired about his use of the pipe. Because he failed to do a thorough pat-down, Officer Flores failed to discover that Gomez was holding a plastic bottle containing methamphetamine and marijuana somewhere on his person.

16.     While the Officers searched Hill's car, Gomez and Crutchfield were placed in the back seat of Officer Macaraeg's police cruiser without being handcuffed.

17.     While left unattended in Officer Macaraeg's cruiser, Gomez had access to the illegal drugs he was holding. To avoid detection, Gomez swallowed two plastic baggies containing methamphetamine and an unknown amount of "loose" marijuana.

18.     Meanwhile, the Officers found a plastic bottle containing methamphetamine and marijuana in Hill's car. After finding these items, Officer Flores returned to Officer Macaraeg's cruiser to question Gomez and Crutchfield. Upon opening the rear door, Officer Flores stated that he smelled "raw ass marijuana" and began questioning Gomez and Crutchfield. Flores' body cam

- 4 -

video shows Gomez handing Flores the empty pill bottle he had been holding.  Officer Flores ordered Gomez out of the vehicle and began searching him.  At this point, Officers Flores and Macaraeg saw that Gomez had something in his mouth which he was attempting to chew and swallow.  Officer Flores remarked: "It's in his mouth.  He's got marijuana in his mouth."  Then, directing his comments to Gomez, Officer Flores said: "you're getting fucking another felony charge, dumbass."  Gesturing toward the camera filming the back seat of Macaraeg's cruiser, Flores continued to berate Gomez, "you're a dumbass, you know that?  You're a fucking…look, look right here there's a camera in your face the whole time."  Flores then told Macaraeg he was going to "hit" Gomez with an additional charge of tampering with evidence.  Flores also acknowledged that during his initial pat-down of Gomez, he must have missed that Gomez had the bottle on his person.

19.     After handcuffing Gomez, Officer Flores then searched the backseat of Officer Macaraeg's cruiser.  Officer Flores' body cam video also shows him retrieving a small plastic bag left on the backseat of Macaraeg's vehicle where Gomez had been seated.

20.     On the body camera video, Officer Flores can be heard telling Officer Henderson that he believed the methamphetamine found in Hill's vehicle belongs to "the one that ate the weed" who is "getting hit with a tampering charge."

21.     Based on the presence of methamphetamine in a baggie in the bottle recovered from Hill's car and the presence of an empty bottle and a baggie in Macaraeg's cruiser, the officers knew or should have reasonably suspected that Gomez had likely ingested methamphetamine as well as marijuana.

22.     As the body camera video shows, the Officers, particularly Flores, were embarrassed and angry that Gomez had access to and ingested illegal substances in the backseat

of Macaraeg's cruiser.  Their embarrassment, anger and fear of disciplinary action clouded the Officers' judgment and ability to objectively assess the situation.  Had the Officers objectively assessed the situation, they should have known, as a lay person would have, that Gomez was in serious need of medical care.  However, because they were angry, embarrassed and feared disciplinary action they could not unload Gomez fast enough at the jail.

23.     At some point, in connection with the arrest, Officer Flores called his supervisor, Lieutenant Roosevelt Twilley ("Lt. Twilley").  Officer Flores informed Lt. Twilley that he observed Gomez ingesting marijuana while in custody.  Despite this being a felony arrest, Lt. Twilley ignored the City's policy requiring he be present at the scene and gave Officer Flores instructions over the phone.  During their phone call, Officer Flores and Lt. Twilley discussed that Gomez had ingested an illegal substance and whether Gomez needed medical care.  Officer Flores also told Lt. Twilley that methamphetamine was found at the scene.  Based solely on his call with Flores and Flores' non-medical assessment that Gomez "appeared okay," Lt. Twilley authorized and directed Flores to take Gomez to jail instead of the hospital.  Twilley did not personally observe or talk to Gomez.  When Lt. Twilley gave this instruction and directive to Officer Flores, he was acting as the final decision maker for an on behalf of the City.

24.     The City has adopted a prisoner processing policy applicable to MPD which states, "[a]rresting officers should take prisoners to an emergency room/hospital if the prisoners are charged with ingesting an illegal substance (tampering with evidence), or who have told arresting officers that they have ingested illegal substances."  Although any such conclusion would be objectively unreasonable in Gomez's situation, this policy provides no exception for "marijuana only" ingestion.  Lt. Twilley authorized, directed and instructed Flores and the other arresting officers to disregard and deviate from the mandatory directive set forth in the prisoner processing

policy.   Had this policy been followed, Gomez would not have died as a result of a methamphetamine overdose.

25.     Gomez was charged with Fabricating/Tampering with Evidence pursuant to Tenn. Code Ann. 39-16-503.

26.     Officer Flores left the scene in his cruiser at approximately 4:25 a.m. to "get the weights" of the methamphetamine and marijuana recovered at the scene.  Officer Macaraeg left the subject location at 4:36 a.m. and transported Gomez and Crutchfield to the Shelby County Jail for booking.  When he arrived at the jail, Macaraeg did not inform anyone at the jail that Gomez had consumed an illegal substance.  Officer Macaraeg intentionally withheld this information because he and the other Officers knew that the jail would have refused to accept Gomez and required him to go to Regional One for medical care.

27.     Shelby County's policy provides that cases in which detainees are charged "with ingesting an illegal substance (Tampering with evidence) and were observed by officers ingested what is believed to be illegal substances" are an "unacceptable condition[]" for admission to the jail.  The policy mandates that if a detainee is charged with tampering by ingestion and the arresting officers believe and inmate has ingested an illegal substance, "the inmate must be referred to Regional Medical Center for clearance."

28.     Shelby County deputies booked Gomez into the jail for three charges of: (1) felony tampering with / fabricating evidence; (2) felony possession of methamphetamine; and (3) misdemeanor possession of marijuana.

29.     Although it was aware that Gomez was being charged with tampering with evidence, Shelby County personnel at the jail did not ask Officer Macaraeg about the basis of this charge or whether Gomez had ingested any illegal substance.

30.     Shelby County's medical evaluation policy does not require jail personnel to request information form the arresting officer presenting the detainee for booking.

31.     The City's prisoner processing policy amounts to a "don't tell" policy regarding the jail, while Shelby County's policy medical evaluation policy amounts to a "don't ask" policy when arresting officers present detainees for booking.   These policies, in effect, encourage non-communication between jail personnel and the arresting officer about a detainee's ingestion of illegal substances.

32.     Despite having actual knowledge and/or constructive notice about Gomez's ingestion of illegal substances, Defendants failed to provide medical care for a serious medical condition.   Had medical care been timely provided to Gomez, he would not have died as a result of a methamphetamine overdose.

33.     At around 8:30 a.m. on June 28, 2018, Gomez made his initial court appearance by video from the jail.

34.     On the way back to his cell at approximately 9:40 a.m., Gomez was observed by personnel at the jail exhibiting symptoms consistent with drug use.  At approximately 11:22 a.m., Gomez was taken to Regional One Medical Center for emergency treatment.

35.     Shortly after arriving at the hospital, Gomez coded and was placed on a ventilator.

36.     Sometime later that afternoon, Shelby County Sergeant Greg Word ("Sgt. Word") contacted Plaintiff by telephone and told her that Gomez had swallowed narcotics.

37.     Sgt. Word told Plaintiff that a bag containing a lethal dose of methamphetamine had dissolved in Gomez's stomach and released a lethal dose of narcotics into his blood stream.

38.     By the time Gomez's parents arrived at Regional One, he was unresponsive and essentially brain dead.

- 8 -

39.     On June 29, 2018, while Gomez was still in an unresponsive state, he was released on his own recognizance.

40.     Gomez was pronounced dead by hospital staff on July 2, 2018.

41.     According to the autopsy report, Gomez's stomach contained two plastic bags.  The report concluded: "death was caused by anoxic encephalopathy status post cardiopulmonary arrest and resuscitation methamphetamine toxicity."

42.     In August, 2018, MPD's Inspectional Services Bureau ("ISB") instituted an investigation into Gomez's death.  On August 7, 2018, Lt. Twilley was charged with Neglect of Duty for "fail[ing] to instruct officers to transport [Gomez] to the hospital after he ingested an illegal substance."  Officers Flores, Macaraeg and Henderson were charged with failing to comply with the prisoner processing policy.  Officer Macaraeg was also charged for violating the policy requiring he record in-car video of detainees placed in his vehicle.

43.     Plaintiff's Complaint was filed on June 26, 2019.

44.     After suit was filed, and over a year after charges were filed against the Officers, MPD initiated disciplinary hearings for the Officers on August 26-27, 2019.

45.     Lt. Twilley's Neglect of Duty charge was sustained on October 9, 2019, and he was ordered to serve a suspension of twenty-five (25) days without pay.

46.     The hearing summary states that Defendant Twilley had final authority to direct the Defendant Officers' "adherence to [MPD]'s policies, regulations, order, and procedures."  Ensuring Flores', Macaraeg's and Henderson's adherence to and correct interpretation of the prisoner processing policy was Twilley's job and his alone.  The summary further states, "[Twilley] [had] the responsibility to influence subordinate members and to motivate them to perform at a high level of efficiency.  [Twilley] [had] the responsibility for the performance of all

subordinates placed under [him] and while [he] can delegate authority and functions to subordinates, [he] cannot delegate responsibility."

47.     The charge against Officer Flores for failing to comply with the policy was sustained on October 17, 2019, and he was ordered to serve a suspension of twenty (20) days without pay.

48.     The charge against Officer Macaraeg for failing to comply with the policy was sustained on November 7, 2019, and he was also ordered to serve a suspension of twenty (20) days without pay.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983 AGAINST INDIVIDUAL DEFENDANTS**
**(FAILURE TO PROVIDE MEDICAL CARE)**

49.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

50.     At all relevant times, Defendants Flores, Henderson, Macaraeg, and Twilley acted as agents of MPD and were acting under the color of state law.

51.     Defendants Flores, Henderson, Macaraeg and Twilley violated Gomez's Fourth and Fourteenth Amendment right to receive adequate medical treatment while in police custody when they failed and refused to take him for medical treatment despite actual knowledge that he had ingested marijuana and constructive knowledge he had likely ingested methamphetamine.

52.     As this Court previously recognized in *Bass v. Shelby County, Tennessee*, 2010 WL 11597167; Cause No. 07-2142-STA (W.D. Tenn. 2010), pre-trial detainees, such as Gomez, have a constitutional right to adequate medical treatment.  This right is violated when arresting officers act with deliberate indifference to a serious medical need of the detainee and possess a culpable

- 10 -

state of mind in denying medical care.

53.     In failing and refusing to take Gomez for medical treatment, Defendants Flores, Henderson, Macaraeg and Twilley acted with deliberate indifference.  As in *Bass*, the Defendant Officers knew Gomez had consumed an illegal substance because they saw him chewing and swallowing marijuana.  Based on the evidence recovered at the scene and their stated belief that methamphetamine belonged to Gomez, the Officers should have reasonably suspected that Gomez had also ingested methamphetamine.

54.     As this Court noted in *Bass*, it should have been obvious to the Defendant Officers, as it would have been to a lay person, that Gomez needed medical attention "even if he was not physically exhibiting signs of such consumption at the present time."  This is, of course, what the City's prisoner processing policy supposedly requires. Even if the arresting officer believes "only" marijuana was ingested the policy mandates medical treatment for the detainee.  Because such a belief may be objectively unreasonable and inaccurate (as in this case), the policy makes no exception for "marijuana only" ingestion.

55.     Defendants Flores, Henderson, Macaraeg and Twilley also possessed sufficiently culpable states of mind in denying medical care to Gomez.  Defendant Officers had actual knowledge that Gomez had ingested an unknown quantity of marijuana and should have reasonably suspected he ingested methamphetamine as well.  It is undisputed that Gomez swallowed baggies of methamphetamine and that this caused his death.  The Defendant Officers should have known that Gomez needed medical attention because they knew or should have known of the City's prisoner processing policy mandating medical care in all cases where a detainee is charged with tampering with evidence by consuming an illegal substance.  The Defendant Officers intentionally deviated and departed from this policy and did not take Gomez to the hospital.

Instead, following Lt. Twilley's directive and instruction, they took Gomez to jail.  As in *Bass*, the Officers' culpability is further evidenced by their conscious decision to conceal and not disclose that Gomez had consumed an illegal substance when he was presented for booking at the jail.

56.     As a direct and proximate result of the Officers' deliberate indifference to his serious medical need, Gomez died.

**COUNT II**
**VIOLATION OF 42 U.S.C. § 1983 AGAINST THE CITY OF MEMPHIS**
**(*MONELL* LIABILITY)**

57.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

58.     Defendant City of Memphis, Tennessee is municipal entity organized and existing under the laws of the State of Tennessee which operates, administers, maintains and controls the MPD as one of its executive branches.

59.     As this Court noted in *Bass*, at the time of the arrest at issue in that case (which was in 2006), the City did not have a specific policy regarding the procedures for police officers to follow in the event a detainee swallows a controlled substance."  Despite the absence of a specific policy, the *Bass* Court found that there was an issue of fact as to whether the defendant officers had violated the detainee's clearly established constitutional rights by failing to provide adequate care after observing him ingest an illegal substance while in their custody.

60.     Apparently in response to *Bass*, the City adopted a specific policy supposedly mandating that medical care be provided to detainees who have ingested illegal substances while in custody.  The *Bass* decision put the City on notice of at least one prior instance when MPD officers had arguably acted with reckless disregard and with culpable minds by failing and refusing to provide medical care to a detainee who was observed swallowing marijuana.  The new policy

was ostensibly intended to deter and prevent future constitutional violations of this nature and to give a mandatory directive to its officers.

61.     As Gomez's case illustrates, the City's policy is for show and is not followed in practice.  The City's actual custom and policy is no different than it existed in 2006 when there was no written policy.  MPD officers are authorized and directed to ignore the "mandatory" prisoner processing policy and decide on their own whether or not to provide medical care.  By not enforcing the written policy, the City condones and, in fact, empowers its officers to act with reckless indifference to the obvious and severe medical needs of detainees.  This is exactly what happened to Gomez, and the City is directly liable for his death under *Monell*.

62.     In addition, and/or in the alternative, the City is also liable for failing to adequately train/supervise its officers on its prisoner processing policy.  Officer Flores told ISB investigators he was aware there was a policy pertaining to prisoners who ingested illegal drugs, but could not recall what the policy was.  Lt. Twilley told the ISB "I've never known anybody to receive medical attention from digesting [sic] marijuana…"  Officer Macaraeg stated in disciplinary hearing that at the time of Gomez's arrest he had not been "aware" that there was a policy that "says something about someone ingesting contraband should be taken to the hospital."

63.     In *Bass*, this Court observed that a municipality acts with deliberate indifference where it "has ignored a history of abuse and was clearly on notice that the training/supervision in this particular area was deficient and likely to cause injury."  *Bass* itself demonstrates the City was on notice of its duty to train/supervise its officers in providing adequate medical care for detainees who have ingested illegal substances.  The City clearly failed to train and supervise the Defendant Officers involved in Gomez's arrest.

64.     As a direct and proximate result of the City's failure to train/supervise its Officers

on its "mandatory" prisoner processing policy, Gomez was deprived of adequate medical care.

65.     In addition, or in the alternative, the City violated Gomez's rights pursuant to a final policy-maker's deliberate choice to follow an unlawful course of action with respect to the application of the prisoner processing policy.

66.     Defendant Twilley, as the shift commander/field supervisor of Defendants Flores, Macaraeg and Henderson, had final authority under the MPD's supervisor/watch commander responsibility policy.  As such, he was empowered by the City as the final authority to influence and direct his subordinates to follow or not the prisoner processing policy in Gomez's situation. As Twilley's MPD hearing officer wrote:

> As stated in departmental policy, *supervisory members will be responsible for adherence to the Department's policies regulations, orders, and procedures*.  They are responsible and accountable for the maintenance of discipline and will provide leadership, supervision, training, and ensure the efficiency of unit operations.  They have responsibility to influence subordinate members and to motivate them to perform at a high level of efficiency.  They have the responsibility for the performance of all subordinates placed under them and while they can delegate authority and functions to subordinates, *they cannot delegate responsibility*.  They remain answerable and accountable for failures or inadequacies on the part of their subordinates.

67.     Twilley's directive and instruction to deviate and depart from the mandatory policy is directly attributable to the City and is the moving force behind the denial of Gomez's right to medical treatment.

68.     The City's denial of Gomez's Fourteenth Amendment right to medical treatment was the proximate cause of his death.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1983 SHELBY COUNTY, TENNESSEE

69.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

70.     Defendant Shelby County, Tennessee is municipal entity organized and existing under the laws of the State of Tennessee which operates, administers, maintains and controls the Shelby County Sheriff's Office ("SCSO") as one of its executive branches.

71.     Shelby County established policies and procedures for the SCSO regarding the provision of medical care to detainees and prisoners.  These policies and procedures include procedural guidelines for jail medical staff to evaluate detainees presented for booking.

72.     In establishing these procedures, Shelby County had a duty under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States to refrain from withholding medical care, or allowing policies and procedures which created a substantial likelihood that the serious medical needs of detainees or prisoners would go untreated or would be treated with reckless indifference by its agents, servants and employees employed by Shelby County.

73.     The medical evaluation policy relies entirely upon information provided by a "cursory" visual examination of the detainee and the detainee's verbal responses to four (4) mandatory questions, including "[h]ave you recently had any alcohol or drugs?"

74.     The medical evaluation policy does not require jail medical staff to obtain any information from the arresting officer presenting the detainee for booking.

75.     By not requiring jail medical staff to inquire of arresting officers whether detainees presented for booking had consumed alcohol or drugs, Shelby County permits a pattern and practice of intentionally excluding essential information about the medical condition of detainees presented for booking from its and intake procedures.

76.     This "don't ask" policy was the moving force behind the denial of Gomez's medical care.  Shelby County's "don't ask" policy is a custom for the purposes of *Monell* liability.

- 15 -

77.    Defendant Macaraeg possessed actual knowledge that Gomez had ingested an illegal substance.  Had the SCSO personnel asked Macaraeg whether Gomez had ingested an illegal substance, it would have obtained information that rendered Gomez as an "unacceptable" prisoner and he would have been refused admission to the jail on the basis that he had ingested an illegal substance.  Macaraeg would have been forced to transport Gomez to Regional One.

78.    Instead, Shelby County remained intentionally ignorant of Gomez's condition pursuant to its "don't ask" policy and thereby denied him medical care.

79.    Shelby County's denial of Gomez's Fourteenth Amendment right to medical treatment was the proximate cause of his death.

## COUNT IV
## STATE LAW CLAIMS

### A.
### NEGLIGENCE

80.    Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

81.    At the time and on the occasion in question, Defendants, individually, jointly, and severally, possessed a duty of ordinary care while acting as officers of the law.  Specifically, Defendants possessed the duty to keep Gomez reasonably safe, to avoid reasonable harm to him, and to act as a reasonable prudent officer would have acted under the same or similar circumstances.

82.    The above acts constitute common law negligence and negligence per se and were each a proximate cause of the occurrence in question.  Further, the act(s) and/or omission(s) of Defendants, individually, jointly, and severally, resulted in Gomez's damages.

**B.**
**GROSS NEGLIGENCE**

83.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

84.     The actions of Defendants, individually, jointly, and severally, when viewed objectively involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Gomez.

85.     Defendants had actual, subjective awareness of the risk, but nevertheless preceded with conscious indifference to the rights, safety or welfare of Gomez herein and as such constitutes gross negligence (malice) as the term is defined under Tennessee law.  As a result, Plaintiff is entitled to the recovery of punitive damages.

**C.**
**NEGLIGENT HIRING, RETENTION, SUPERVISION, AND CONTROL**

86.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

87.     At the time and on the occasion in question, Defendants were negligent in hiring, retaining, supervising and/or control their employee(s), servant(s), and/or agent(s), who failed to render aid and/or deprived Gomez of life saving and necessary medical care.

88.     Defendants had a duty to exercise ordinary care in the hiring, supervising and training of its employees, particularly regarding matters involving drug ingestion.  Defendants breached that duty in the following respects, among others:

(a)     failing to adequately train employees, agents or servants;

(b)     failing to properly supervise employees, agents or servants;

(c)     failing to comply with laws, rules, statutes, standards, policies, and regulations

- 17 -

regarding arrests;

(d)     failing to comply with laws, rules, statutes, standards, policies, and regulations regarding providing medical assistance to custodians and/or detainees that are injured or become injured while in police custody;

(e)     failing to correct and ratifying Defendant Officers' abuse of custodians and/or detainees by allowing them to be placed into custody and/or jail with actual and/or constructive notice of their ingestion of narcotics without providing them with medical care, withholding their medical care, and/or ignoring their potentially life-threatening medical conditions; and

(f)     other acts of negligent hiring, retention, supervision and control as will be more fully shown at trial.

89.     The above acts constitute negligence and were each a proximate cause of the occurrence in question.  Further, the act(s) and/or omission(s) of Defendants proximately caused Plaintiff's damages.

## D.
## RECKLESS DISREGARD

90.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

91.     The act(s) and/or omission(s) of Defendants, in both their official capacity and their individual capacity constituted a reckless disregard for the rights and safety of the Plaintiff herein. Further, these act(s) and/or omission(s) were perpetrated with such callousness that a reasonable person can certainly conclude that these act(s) and/or omission(s) were carried out without any regard as to their effects.  Therefore, the act(s) and/or omission(s) constitute a reckless disregard

for the rights and safety of the Plaintiff.

92.     The act(s) and/or omission(s) of these Defendants, including the officers in their official capacities were a proximate cause as to the injuries and damages sustained by Plaintiff.

**E.**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

93.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

94.     The act(s) and/or omission(s) of Defendants on the day in question caused Gomez and Plaintiff severe emotional distress through Defendants' tortious conduct.  The incident was a harrowing, traumatic, and disturbing event, from which Gomez and his family have has suffered serious emotional anguish.   Therefore, the act(s) and/or omission(s) constitute a negligent infliction of emotional distress.

95.     The above act(s) and/or omission(s) constitute negligent infliction of emotional distress and were each a proximate cause of the injuries and damages sustained by the Plaintiff.

**F.**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

96.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

97.     The act(s) and/or omission(s) of Defendant on the night in question intentionally and/or recklessly caused Plaintiff to suffer severe emotional distress.  Plaintiff suffered severe emotional distress as a result of the extreme and outrageous acts.  Defendants' acts to harm Plaintiff were intentional and/or reckless.  Therefore, the act(s) and/or omission(s) constitute an intentional infliction of emotional distress.

98.     The above act(s) and/or omission(s) constitute intentional infliction of emotional

distress and were each a proximate cause of the injuries and damages sustained by the Plaintiff.

**G.**
**VICARIOUS LIABILITY – RESPONDEAT SUPERIOR**

99.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

100.     Upon information and belief, Defendants Flores, Henderson, Macaraeg, and Twilley, along with the other currently unknown officers involved in this matter, were employee(s), servant(s), and/or agent(s) of either the City of Memphis, Tennessee or Shelby County, Tennessee.  Thus, the principal Defendants are vicariously liable for the actions of their employee(s), servant(s), and/or agent(s) under the doctrine of respondeat superior.

**H.**
**RECKLESS INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS**

101.     Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

102.     The failure of Defendants to assure that Gomez received medical evaluation and treatment prior to being placed at a detention facility was in further violation of Gomez's rights under the Fourth and Fourteenth Amendment to the Constitution of the United States to be free from reckless indifference to his serious medical needs.

103.     The City of Memphis, Tennessee and/or Shelby County, Tennessee failed to adequately train Defendants Flores, Henderson, Macaraeg, and Twilley, along with the other currently unknown officers involved in this matter, in proper arrest and detention procedures so as to insure that they did not violate the rights of a citizen and to insure that the Gomez would be free of the officers' reckless indifference to his serious medical needs.

104.     The City of Memphis, Tennessee and/or Shelby County, Tennessee further failed

to adequately supervise Defendants Flores, Henderson, Macaraeg, and Twilley, along with the other currently unknown officers involved in this matter, in order to insure that they did not violate the rights of a citizen when being apprehended and to insure that apprehended citizens receive adequate medical attention when needed.

105.    The failure to provide medical evaluation or care to Gomez after he was in custody and injured violated established policies and procedures of Defendants regarding provisions of medical service to detainees and prisoners.

106.    Defendants have a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing in effect policies and procedures that create a substantial likelihood that detainees or prisoners would go untreated or would be treated with reckless indifference by its agents, servants and employees of The City of Memphis, Tennessee and/or Shelby County, Tennessee.

107.    Notwithstanding their duties, Defendants violated Gomez's Constitutionally protected rights and intentionally and/or recklessly ignored and delayed medical care to Gomez.

108.    Defendants' failure to provide medical evaluation or care is a violation of Gomez's Constitutionally protected rights under 42 U.S.C. § 1983.

109.    As a direct and proximate result of one or more of the said wrongful acts or omissions to act of Defendants, Gomez suffered severe and permanent injury to his person, pain, suffering, disability, mental anguish, humiliation, and other injuries and damages which shall be proven at trial.

## **DAMAGES**

110.    Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

111.    As a result of the act(s) and/or omission(s) of these Defendants, Plaintiff seeks recovery for all damages including, but not limited to actual, economic, non-economic, compensatory, exemplary, punitive, pre-judgment interest, post-judgment interest, attorneys' fees, costs of Court, and any other damages which the Court deems proper.

112.    Plaintiff also seeks recovery for all damages that arise out of and as a direct and proximate result of the Defendants' negligent act(s) and/or omission(s) including, but not limited to, medical expenses, lost wages and income, pain and suffering, severe mental pain, anguish, suffering, inconvenience, worry, and emotional distress that are directly attributable to the incident that is the basis of this lawsuit.

113.    Plaintiff also seeks any and all damages and fees provided for by 42 U.S.C. § 1988.

## PUNITIVE DAMAGES

114.    Plaintiff re-alleges and incorporates herein the preceding allegations as if set forth herein in their entirety.

115.    The conduct of Defendants herein constitutes a willful, wanton, egregious and reckless disregard for the rights and safety of the Gomez, an award of punitive damages is appropriate and necessary under these facts.

## JURY TRIAL DEMANDED

116.    Plaintiff demands a jury trial.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon final trial hereof they be entitled to take, have and recover, of and from said Defendants for all of the above referenced damages, including actual, economic, non-economic, compensatory, exemplary, punitive, pre-judgment interest, post-judgment interest, attorneys' fees, costs of Court, and for such other and further relief to which they may show themselves to be justly entitled.

- 22 -

This the 20th day of April, 2020.

Respectfully submitted,

**AMY D. GOMEZ, ADMINISTRATRIX OF THE ESTATE OF STEVEN N. GOMEZ, DECEASED**

By: _/s/ Sean R. Guy_____
     Sean R. Guy (MSB# 100362)

OF COUNSEL:

Zachary M. Bonner (TN BPR# 035908; MSB# 103153)
Sean R. Guy (MSB# 100362)
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone:     (601) 707-5725
Facsimile:      (601) 510-2939
sguy@mmqnlaw.com
zbonner@mmqnlaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing pleading was filed electronically through the Court's

CM/ECF system and served electronically on all parties enlisted to receive service electronically.

SO CERTIFIED, this the 20th day of April, 2020.

    _/s/ Sean R. Guy_____
    Sean R. Guy

- 23 -