## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| AMY D. GOMEZ, ADMINISTRATRIX OF THE ESTATE OF STEVEN N. GOMEZ, DECEASED, and GABRIELLE HOPE GOMEZ, by and through her guardian DANIELLE HARTHCOCK, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:19-cv-02412-JPM-tmp |
| CITY OF MEMPHIS, TENNESSEE; SHELBY COUNTY, TENNESSEE; OFFICER JOSE FLORES, individually and in his official capacity; OFFICER A. HENDERSON, individually and in his official capacity; OFFICER VINCENT MACARAEG, individually and in his official capacity; LIEUTENANT ROOSEVELT TWILLEY, individually and in his Official Capacity; AND JOHN DOE DEFENDANTS 1-15, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## ORDER DENYING DEFENDANT OFFICERS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Before the Court is Defendants Jose Flores, Anthony Henderson, Vincent Macaraeg, and

Roosevelt Twilley's (hereinafter collectively "the Defendant Officers") Motion to Dismiss the

Amended Complaint, filed on May 5, 2020.  (ECF No. 88.)  The Defendant Officers move the

Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Amy Gomez's[1]

---

[1] On June 30, 2020, the Court Granted Plaintiff Amy Gomez's Motion for Joinder under Rule 17 to join Gabrielle Hope Gomez as the real party in interest in this case, following the Defendant Officers' filing of their Motion to Dismiss.  (See ECF No. 106.)

Amended Complaint on several grounds.  (See id.)  The Defendant Officers assert: (1) that the

Amended Complaint "fails to state a cause of action against them in their individual capacities

under both Federal and Tennessee state law"; (2) that Plaintiff Amy Gomez lacks standing to

bring this claim, as she is not the real party in interest in this case; and (3) that the Defendant

Officers are immune from suit under the Tennessee Governmental Tort Liability Act

("TGTLA").  (Id. at PageID 504–05.)  The Court denied the Motion in part as moot by granting

Plaintiff's Motion for Joinder on June 30, 2020.  (ECF No. 106.)

Plaintiff filed her Response on June 1, 2020.  (ECF No. 95.)  Plaintiff asserts that under

applicable Sixth Circuit case law, she has sufficiently alleged a claim under § 1983 for failure to

provide adequate medical treatment to Steven Gomez in violation of the Fourteenth Amendment,

and that granting Defendant Officers immunity under the TGTLA would be irreconcilable with

the City of Memphis's assertion of immunity under the TGTLA.  (See id. at PageID 578–83.)

For the reasons set forth below, the Defendant Officers' Motion to Dismiss is **DENIED**.

I.      **BACKGROUND**

        *A. Factual Background*

        This action arises out of the death of Steven Gomez while he was in the custody of the

Shelby County Jail following his arrest by members of the Memphis Police Department.  (See

generally Am. Compl., ECF No. 79.)  Plaintiff alleges that on June 27, 2018, at around 3:20 a.m.,

Decedent Steven Gomez was in Amanda Hill's parked car in Memphis, Tennessee with several

other individuals, including Hill, Antony Crutchfield and Elizabeth Horde.  (Id. ¶ 12.)  In

response to a "suspicious persons" call, Memphis Police Department officers Jose Flores,

Anthony Henderson, and Vincent Macaraeg arrived on the scene.  (Id. ¶¶ 13–14.)  The Officers

detained all four individuals, including Gomez.  (Id. ¶ 15.)  A methamphetamine pipe was found

2

on Gomez's person.  (Id.)  Plaintiff alleges that during the initial search of Gomez, Officer Flores

"failed to discover that Gomez was holding a plastic bottle containing methamphetamine and

marijuana somewhere on his person."  (Id.)

After this initial search, Gomez was placed in the back seat of Officer Macaraeg's police

cruiser, along with Crutchfield.  (Id. ¶ 16.)  Plaintiff alleges that while unattended and uncuffed

in the backseat, Gomez "swallowed two plastic baggies containing methamphetamine and an

unknown amount of 'loose' marijuana."  (Id. ¶ 17.)  At the same time, the Defendant Officers

"found a plastic bottle containing methamphetamine and marijuana in Hill's car[,]" the vehicle in

which Gomez and the other detainees had been sitting.  (Id. ¶ 18.)

When Officer Flores returned to his police cruiser, Gomez handed him the empty pill

bottle and Officer Flores is alleged to have said he smelled raw marijuana.  (Id.)  Officer Flores

allegedly also observed that "Gomez had something in his mouth which he was attempting to

chew and swallow."  (Id.)  Flores then indicated, "It's in his mouth.  He's got marijuana in his

mouth."  (Id.)  Flores handcuffed Gomez and searched the backseat of the police cruiser.  (Id.

¶ 19.)  According to footage from Flores's body cam, Flores retrieved a small plastic bag from

the backseat of the police cruiser where Gomez had been sitting.  (Id.)  Flores told Officer

Henderson that Gomez was "the one who ate the weed" and that Gomez was "getting hit with a

tampering charge."  (Id. ¶ 20.)

At some point during the arrest, Flores allegedly called his supervisor, Lieutenant

Roosevelt Twilley.  (Id. ¶ 23.)  Plaintiff alleges that Twilley "ignored the City's policy requiring

he be present at the scene and gave Officer Flores instructions over the phone" on how best to

proceed.  (Id.)  Plaintiff alleges that Flores and Twilley discussed Gomez's ingestion of illegal

controlled substances, "whether Gomez needed medical care," and that the officers had

recovered methamphetamine.  (Id.)  Flores allegedly informed Twilley that Gomez appeared "okay."  (Id.)  Twilley then "authorized and directed Flores to take Gomez to jail instead of the hospital."  (Id.)  According to Plaintiff, MPD policy requires arresting officers to "take prisoners to an emergency room/hospital if the prisoners are charged with ingesting an illegal substance (tampering with evidence), or who have told arresting officers that they have ingested illegal substances."  (Id. ¶ 24.)  Plaintiff asserts that "Twilley authorized, directed and instructed Flores and the other arresting officers to disregard and deviate from the mandatory directive set forth in the prisoner processing policy."  (Id.)

At approximately 4:36 a.m., Officer Macaraeg transported Gomez and Crutchfield in his police cruiser to the Shelby County Jail for booking and processing.  (Id. ¶ 26.)  Macaraeg did not inform jail employees that Gomez had ingested controlled substances.  (Id.)  According to Plaintiff, "Officer Macaraeg intentionally withheld this information because he and the other Officers knew that the jail would have refused to accept Gomez and required him to go to Regional One for medical care."  (Id.)  Plaintiff alleges that Shelby County policy requires that in all cases where detainees are charged with tampering with evidence (as Gomez was) based on the detainee's ingestion of controlled substances, or where the officers observed the detainee ingest "what [are] believed to be illegal substances," the detainee must be "referred to Regional Medical Center for clearance," as they are in an "unacceptable condition[]" for detention.  (Id. ¶ 27.)  At the jail, Gomez was charged with: (1) felony tampering with/fabricating evidence; (2) felony possession of methamphetamine; and (3) misdemeanor possession of marijuana.  (Id. ¶ 28.)

At 11:22 a.m., more than 7 hours after his initial detention, Gomez exhibited symptoms in the jail consistent with drug use and was taken to Regional One Medical Center for emergency

treatment.  (Id. ¶ 34.)  He "coded" and was placed on a ventilator shortly thereafter.  (Id. ¶ 35.)

Shelby Count Sergeant Greg Word contacted Plaintiff to inform her that her son had swallowed a

"bag containing a lethal does of methamphetamine," which had "dissolved in Gomez's stomach

and released a lethal dose of narcotics into his blood stream."  (Id. ¶¶ 36–37.)  On July 2, 2018,

Gomez was pronounced dead.  (Id. ¶ 40.)  According to Plaintiff, the autopsy report indicated

that Gomez's stomach contained two plastic bags and that death was caused by

"methamphetamine toxicity."  (Id. ¶ 41.)  Plaintiff alleges that the Memphis Police Department

charged Twilley with neglect of duty for "fail[ing] to instruct officers to transport [Gomez] to the

hospital after he ingested an illegal substance."  (Id. ¶ 42.)  Officer Macaraeg also was found to

have violated the Memphis Police Department policy requiring officers to record video of

detainees held in the back of their police cruisers.  (Id.)

### B. Procedural History

Plaintiff Amy Gomez filed this action on June 26, 2019.  (ECF No. 1.)  The Defendant

Officers filed their Answers on August 6, 2019.  (ECF Nos. 27–30.)  Defendant Shelby County

filed its Answer on August 27, 2019.  (ECF No. 35.)  The Court entered a scheduling order on

September 4, 2019.  (ECF No. 39.)

On March 31, 2020, Plaintiff Amy Gomez filed a Motion to Amend the Complaint.

(ECF No. 59.)  On April 20, 2020, leave to amend was granted.  (ECF No. 78.)  Plaintiff Amy

asserts the following causes of action: (1) a claim for violation of Decedent's Fourth and

Fourteenth Amendment Rights under 42 U.S.C. § 1983 against the Defendant Officers for their

failure to provide adequate medical treatment to Decedent; (2) a § 1983 Monell claim against the

City of Memphis; (3) a § 1983 claim against Shelby County for violations of the Fourth, Eighth,

and Fourteenth Amendments; (4) a negligence claim against all Defendants; (5) a gross

negligence claim against all Defendants; (6) a negligent hiring, retention, supervision, and control claim as to the City of Memphis and Shelby County; (7) a state law claim for reckless disregard of the health and safety of Decedent; (8) a negligent infliction of emotional distress claim; (9) an intentional infliction of emotional distress claim; (10) vicarious liability against the City of Memphis and Shelby County; and (11) reckless indifference to Gomez's serious medical needs.  (See generally id.)

On May 5, 2020, Defendant Officers filed their Motion to Dismiss.  (ECF No. 88.) Plaintiff responded on June 1, 2020.  (ECF No. 95.)  On June 11, 2020, Plaintiff also filed a Rule 17 Motion for Joinder to join Decedent Gomez's daughter Hope Gomez as the real party in interest in the case.  (ECF No. 98.)  On June 30, 2020, the Court granted the Joinder Motion and denied in part as moot Defendants' Motion to Dismiss.  (ECF No. 106.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery.  Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp.

6

v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides that the claim is not plausible, the case

may be dismissed at the pleading stage.  Iqbal, 556 U.S. at 679.  "[A] formulaic recitation of the

elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The "[f]actual allegations

must be enough to raise a right to relief above [a] speculative level."  Ass'n of Cleveland Fire

Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at

555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A complaint need not contain detailed factual

allegations.  Twombly, 550 U.S. at 570.  A plaintiff without facts who is "armed with nothing

more than conclusions," however, cannot "unlock the doors of discovery."  Iqbal, 556 U.S. at 678-

79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13,

2011), aff'd, 481 F. App'x 252 (6th Cir. 2012).

Assessing the facial sufficiency of a complaint ordinarily must be undertaken without

resort to matters outside the pleadings.  Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104

(6th Cir. 2010).  "[D]ocuments attached to the pleadings become part of the pleadings and may be

considered on a motion to dismiss."  Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508

F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino, 593

F.3d 459, 463 n.1 (6th Cir. 2010).  Even if a document is not attached to a complaint or answer,

"when a document is referred to in the pleadings and is integral to the claims, it may be considered

without converting a motion to dismiss into one for summary judgment."  Commercial Money

Ctr., 508 F.3d at 335–36.  When evaluating a motion to dismiss, the Court may also take judicial

notice of pertinent matters of public record, including bankruptcy filings.  Signature Combs, Inc.

v. United States, 253 F. Supp. 2d 1028, 1040 n.5 (W.D. Tenn. 2003).

### III.    ANALYSIS

A.        *Plaintiff has adequately pled a claim under 42 U.S.C. § 1983 against the*

*Defendant Officers.*

42 U.S.C. § 1983 provides a private cause of action against government actors for the

"deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."

To succeed on a § 1983 claim, the plaintiff must prove two elements: "(1) that the government

action occurred under color of state law and (2) that the action is a deprivation of a constitutional

or federal statutory right."  Ables v. Shelby County, No. 2:10–CV–02169–JPM–dkv, 2010 WL

3024959, at *2 (W.D. Tenn. July 29, 2010) (citing Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir.

1998)).

The Defendant Officers concede "that they were at all times acting within the scope of

their employment and therefore under [] the color of law," but they assert that "Plaintiff's claims

fail to support [a] finding that [the Defendant Officers] caused a constitutional violation."  (ECF

No. 88 at PageID 507.)  Plaintiff alleges that the Defendant Officers violated Decedent's Fourth

and Fourteenth Amendment right to adequate medical treatment.  (See Am. Compl., ECF No. 79

¶¶ 51, 68.)

"Pretrial detainees have a right under the Fourteenth Amendment to adequate medical

treatment, a right that is analogous to the right of prisoners under the Eighth Amendment."

Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009) (quoting Estate of Carter v. City of Detroit,

408 F.3d 305, 311 (6th Cir. 2005)) (internal quotation marks omitted).  To succeed on a claim

alleging a violation of a pretrial detainee's right to adequate medical treatment, the plaintiff must

prove that the defendants "acted with deliberate indifference to the serious medical needs of the

8

[pretrial] detainee." Estate of Carter, 408 F.3d at 311 (quoting Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2005)) (internal quotation marks omitted). Defendants were deliberately indifferent if they "knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." Watkins, 273 F.3d at 686 (citing Farmer v. Brennan, 511 U.S. 825, 835–37 (1994)).

The deliberate indifference standard has both objective and subjective components. See Spears, 589 F.3d at 254; see also Estate of Carter, 408 F.3d at 311. "For the objective component, the detainee must demonstrate the existence of a sufficiently serious medial need." Estate of Carter, 408 F.3d at 311 (quoting Blackmore v. Kalamazoo Cty., 390 F.3d 890, 895 (6th Cir. 2004)) (internal quotation marks omitted). "For the subjective component, the detainee must demonstrate that the defendant possessed 'a sufficiently culpable state of mind in denying medical care.'" Id. (quoting Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000)). "A plaintiff's assertion that officers should have known that a pretrial detainee had ingested drugs does not suffice to establish a clam of deliberate indifference." Border v. Trumbull Cty. Bd. of Comm'rs, 414 F. App'x 831, 837 (6th Cir. 2011) (citing Weaver v. Shadoan, 340 F.3d 398, 411 (6th Cir. 2003), and Watkins, 273 F.3d at 686). In contrast, courts have found officers to be deliberately indifferent to a pretrial detainee's serious medical needs when "[the officers] refused to 'verify underlying facts that [they] strongly suspected to be true, or declined to confirm inferences of risk that [they] strongly suspected to exist.'" Hinneburg v. Miron, 676 F. App'x 483, 487 (6th Cir. 2017) (quoting Border, 414 F. App'x at 838).

Plaintiff has sufficiently alleged that Defendant Officers were aware that Gomez ingested drugs and were deliberately indifferent to his need for medical attention. Plaintiff alleges that at the time of his stop and arrest, Gomez "swallowed two plastic baggies containing

methamphetamine and an unknown amount of 'loose' marijuana." (ECF No. 79 ¶ 17.)  The

Defendant Officers were aware that Gomez was in possession of methamphetamine and

marijuana, having found both marijuana and methamphetamine in the car.  (Id. ¶ 18.)  The

Defendant Officers also knew that Gomez had ingested drugs.  Officer Flores allegedly

remarked, "It's in his mouth.  He's got marijuana in his mouth." [2]  (Id.)  Flores told Gomez that

he was "going to 'hit' Gomez with an additional charge of tampering with evidence."  (Id. ¶¶ 18,

20.)  The other officers also knew that Gomez had ingested the drugs.  Flores told Officer

Henderson that the methamphetamine found in the vehicle belonged to "the one who ate the

weed" and that Gomez was "getting hit with a tampering charge" for ingesting drugs.  (Id. ¶ 20.)

Plaintiff also alleges that Macaraeg witnessed Gomez ingest the drugs.  (Id. ¶ 18.)

Flores also allegedly called Lt. Twilley to let him know that Gomez ingested drugs:

"During their phone call, Officer Flores and Lt. Twilley discussed that Gomez had ingested an

illegal substance and [discussed] whether Gomez needed medical care . . . . Based solely on his

call with Flores and Flores'[s] non-medical assessment that Gomez 'appeared okay,' Lt. Twilley

authorized and directed Flores to take Gomez to jail instead of the hospital."  (Id. ¶ 23.)

When Gomez was transported to the Shelby County Jail, Officer Macaraeg allegedly "did

not inform anyone at the jail that Gomez had consumed an illegal substance" because he was

aware of the jail's policy that any inmates who are presented to the jail after ingesting narcotics

and being booked for destruction of evidence would be required to go to "Regional Medical

---

[2] Although this statement is sufficient to show that the Defendant Officers knew Gomez had ingested
marijuana, it is not clear that the officers were aware or had reason to know that Plaintiff ingested
methamphetamine.  Although Plaintiff alleges in the Amended Complaint that "[b]ased on the presence of
methamphetamine in a baggie in the bottle recovered from Hill's care and the presence of an empty bottle and a
baggie in Macaraeg's cruiser, the officers knew or should have reasonably suspected that Gomez had likely ingested
methamphetamine as well as marijuana."  (Id. ¶ 21.)  This allegation alone would not suffice to demonstrate
deliberate indifference to a serious medical need.  See Border, 414 F. App'x at 837.

Center for clearance."  (Id. ¶¶ 24, 27.)  Plaintiff was then charged with Fabricating/Tampering

with Evidence.  (Id. ¶ 25.)

These allegations sufficiently allege both the objective and subjective components of the

deliberate indifference standard.  Plaintiff has alleged "the existence of a sufficiently serious

medical need."  Estate of Carter, 408 F.3d at 311.  From the facts alleged by Plaintiff, a

reasonable person would have understood that Decedent required medical attention, and a

reasonable officer would have known that Decedent required medical attention.  See Hinneburg,

676 F. App'x at 486–87 (finding as sufficient evidence that lay persons would have understood a

detainee experiencing an overdose to require medical attention); see also Smith v. Erie Cty.

Sheriff's Dep't, 603 F. App'x 414, 412 (6th Cir. 2015) ("The objective criterion . . . can be met

by a showing that . . . [the need for medical attention] is so obvious that even a lay person would

easily recognize the need for medical treatment.").  (See id. ¶¶ 27, 32.)  The fact that the

Defendant Officers allegedly violated Shelby County Jail and the Memphis Police Department

policies requiring the hospitalization of any arrestee or detainee who had ingested or likely had

ingested a controlled substance further supports this finding.  (See id. ¶¶ 24, 27, 42, 44–47.)

Plaintiff has also alleged facts demonstrating that the Defendant Officers had actual

knowledge of Gomez's ingestion of controlled substances and his need for immediate medical

attention.  See Ruffin v. Cuyahoga Cty., No. 1:16 CV 640, 2017 WL 2832674, at *6 (N.D. Ohio

June 30, 2017) ("A claimant may satisfy the subjective prong by showing that the official knows

of and disregards an excessive risk to inmate health or safety." (quoting Farmer v. Brennan, 511

U.S. 825, 834 (1994))).  The facts as alleged by Plaintiff demonstrate that the Defendant Officers

had actual knowledge that Gomez at a minimum ingested marijuana, and possibly

methamphetamine, and that the Officers consciously disregarded the risk posed by Gomez's

ingestion of controlled substances.  The Officers' decision to bring Gomez to Shelby County Jail

rather than to the hospital despite their knowledge that Shelby County Jail and Memphis Police

Department policies required otherwise supports the finding "the defendants knew of and

disregarded a substantial risk of harm to [Gomez's] health and safety."  Estate of Carter, 408

F.3d at 312 (quoting Watkins, 273 F.3d at 686).  Officer Flores's call to Lt. Twilley further

supports the finding that the Defendant Officers knew of and disregarded Gomez's need for

medical treatment after he ingested controlled substances.

Finally, the Court notes that the Defendant Officers have provided little in the way of

substantive argumentation to support their assertion that Plaintiff's Amended Complaint fails to

state a claim under § 1983.  It is not the Court's role to advance arguments for the moving party;

the role of the Court is to weigh those arguments made and to determine their merit or lack

thereof.  See Greenlaw v. United States, 554 U.S. 237, 223 (2008) ("In our adversary system, in

both civil and criminal cases, in the first instance and on appeal, we follow the principle of party

presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts

the role of neutral arbiter of matters the parties present."); see also Koprowski v. Baker, 822 F.3d

248, 259 (6th Cir. 2016) (same).  A court should be cautious regarding granting a motion to

dismiss where the Defendant Officers have provided little case law or argumentation to support

their assertion that  "Plaintiff's claims fail to support [a] finding that [the Defendant Officers]

caused a constitutional violation."

In summary, the Court finds that Plaintiff has adequately alleged her § 1983 claim against

the Defendant Officers for violating Decedent's right to adequate medical treatment.

B.      *Plaintiff's TGTLA Claims*

Defendant Officers argue that Plaintiff's state law claims must be dismissed because, presumably, the Defendant Officers are immune from suit under §§ 29-20-301(b) and 29-20-205(2) of the TGTLA.  (See ECF No. 88 at PageID 510–11.)  Plaintiff responds by arguing that the Defendant Officers are not entitled to immunity under § 301(b)'s exception because the City also asserts immunity under the TGTLA's exceptions.  (See ECF No. 95 at PageID 578–79.)

The TGTLA removes Tennessee governmental entities' common law sovereign immunity from suit for any "injury proximately caused by a negligent act or omission of any employee within the scope of his employment."  Tenn. Code Ann. § 29-20-205.  It is the "exclusive state-law tort remedy against a Tennessee municipality."  Black v. City of Memphis, No. 98-6508, 2000 WL 687683, at *4 (6th Cir. May 19, 2000) (unpublished); see also Tinkle v. Dyer Cty., No. 18-01124-STA-egb, 2018 WL 6840155, at *2 (W.D. Tenn. Dec. 31, 2018).

The TGTLA bars plaintiffs from bringing claims against officers when an appropriate remedy lies against the municipality: "No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter unless the claim is one for health care liability brought against a health care practitioner."  Tenn. Code Ann. § 29-20-310(b); see also Robinson v. City of Memphis, 340 F. Supp. 2d 864, 873 (W.D. Tenn. 2004) ("Where the City has waived its immunity, municipal employees are granted immunity from suit.").  The TGTLA does not remove a municipality's common law immunity from suits alleging civil rights violations.  See Tenn. Code Ann. § 29-20-205(2); see also Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010).

13

The City of Memphis asserts immunity from Plaintiff's state law claims under the

TGTLA.  (See City's Answer, ECF No. 89 at PageID 531.)  The City "avers that Plaintiff's

claims do nor arise out of any act or omission that would remove immunity under the TGTLA."

(Id.)  Plaintiff's state law claims arise out of the same facts and circumstances that give rise to

Plaintiff's § 1983 claim, that is, the Defendant Officers', the City of Memphis's, and Shelby

County's failure to provide medical treatment to Steven Gomez following his known ingestion of

controlled substances.  (Compare Am. Compl., ECF No. 79 ¶¶ 49–56, with, ¶¶ 80–109.)  These

claims would fall within the TGTLA's civil rights exception, thus preserving the City's

immunity from Plaintiff's state law claims.[3]  See Johnson, 617 F.3d at 872.  As such, § 310(b)

does not apply to bar Plaintiff's state law claims against the Defendant Officers, as these claims

are not ones "for which the immunity of the governmental entity has been removed."  See Schalk

v. City of Memphis, No. 14-cv-2220-SHL-tmp, 2015 WL 11019255, at *15 (W.D. Tenn. Aug.

13, 2015) (finding that "[b]ecause the essence of [the plaintiff's] claims against Shelby County

and the City of Memphis are civil rights claims," the "municipal entities enjoy immunity from

the negligence claims under the TGTLA," thus precluding application of § 310(b) to the

defendant officers).

The Defendant Officers are also not immune from suit under the TGTLA's civil rights

exception.[4]  Section 205 only addresses governmental entities' immunity from suit arising out of

---

[3] The Court, however, will not dismiss these claims as to the City, despite this finding.  The City has not
filed a Rule 12(b)(6) motion to dismiss these claims and instead relies only on the Defendant Officers' motion.  (See
ECF No. 88 at PageID 504 n.2.)  The Officers in the Motion assert an argument that requires the Court to assume the
City has waived its TGTLA immunity defense.  That is, in order for the Officers to be immune from suit under § 29-
20-310(b), the City would have to accept that Plaintiff is asserting claims "for which the immunity of the
governmental entity has been removed by this chapter . . . ."  The Court will not infer, without a clear indication
from the City, that it has waived this affirmative defense by joining the Defendant Officers' Motion.

[4] As already stated, the Court will not dismiss Plaintiff's state law claims against the City based on the
Defendant Officers' citation to the TGTLA's civil rights exception.  The Court will not extrapolate from this bare
citation alone without supporting argumentation that the City is immune from suit under the TGTLA's civil rights

injuries caused by the negligence of its employees or officers.  See Tenn. Code Ann. § 29-20-205.  Based on the plain language of the statute, the civil rights exception does not apply to officers who are alleged to have committed civil rights violations in their official capacities and who also acted negligently or recklessly while performing their official duties.  See id. § 29-20-205(b).  The TGTLA only applies to "governmental entities" and does not include officers.  See Tenn. Code Ann. § 29-20-102(3)(A) (providing a definition of governmental entity for purposes of the TGTLA).  Defendants Officers are therefore categorically barred from asserting immunity against Plaintiff's state law claims under the TGTLA's civil rights exception.

In summary, the Court finds that Defendant Officers are not immune from Plaintiff's state-law claims under TGTLA §§ 29-20-310(b) or 29-20-205(2).

## IV.   CONCLUSION

For the reasons set forth above, Defendant Officers' Motion to Dismiss is **DENIED.**

**SO ORDERED**, this 20th day of August, 2020.

 /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

exception.  See Greenlaw, 554 U.S. at 223; see also Koprowski, 822 F.3d at 259.  Furthermore, it is not entirely clear that all of Plaintiff's claims against the City would necessarily fall under the TGTLA's civil rights exception, as TGTLA immunity requires a claim-by-claim analysis as to why each claim is, in fact, excepted from the TGTLA's waiver of immunity for governmental entities.  See Partee v. City of Memphis, 449 F. App'x 444, 449 (6th Cir. 2011).