# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| AMY D. GOMEZ, administratrix of the estate of STEVEN N. GOMEZ, DECEASED and GABRIELLE HOPE GOMEZ, by and through her guardian DANIELLE HARTHCOCK, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:19-cv-02412-JPM-tmp |
| v. | ) ) | |
| CITY OF MEMPHIS, TENNESSEE; SHELBY COUNTY, TENNESSEE; OFFICER JOSE FLORES, individually and in his official capacity; OFFICER A. HENDERSON, individually and in his official capacity; OFFICER VINCENT MACARAEG, individually and in his official capacity; LIEUTENANT ROOSEVELT TWILLEY, individually and in his Official Capacity; AND JOHN DOE DEFENDANTS 1-15, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT CITY OF MEMPHIS'S MOTIONS IN LIMINE TO EXCLUDE EXPERT OPINIONS OFFERED BY DR. GEORGE CARTER AND KENNETH GOODRUM**
**ORDER DENYING PLAINTIFFS' MOTION TO STRIKE THE EXPERT WITNESS REPORT AND EXCLUDE TESTIMONY OF MICHAEL D. LYMAN**

Before the Court are Defendant City of Memphis's ("City") Motions in Limine to Exclude Expert Opinions Offered by Dr. George Carter and Kenneth Goodrum Pursuant to F.R.E. 702 and Daubert v. Merrell, filed on August 27 and August 28, 2020 (ECF Nos. 143 & 144) and Plaintiffs' Motion to Strike the Expert Witness Report and Exclude Testimony of Michael D. Lyman, filed on August 28, 2020 (ECF No. 145).

The City moves the Court pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), to exclude the report and testimony of Plaintiffs' expert witness as to lost earning capacity, Dr. George Carter, from being offered at trial. (ECF No. 143-1 at PageID 1077.) The City argues that Dr. Carter's "report is inherently unreliable… due to factual errors and omission and the use of… double and triple layers of hearsay provided by the Plaintiff's counsel." (Id.) The City also argues that Dr. Carter's report is irrelevant. (Id.)

The City also moves the Court pursuant to Fed. R. Evid. 702 and Daubert to exclude the report and testimony of Plaintiffs' expert law enforcement witness, Kenneth Goodrum, from being offered at trial. (ECF No. 144-1 at PageID 1124.) The City argues that Goodrum has opined on ultimate issues of the case, that Goodrum has not demonstrated knowledge, skill or experience regarding the transportation, booking and transfer of prisoners, that certain testimony of Goodrum's is impermissible unscientific speculation and outside his area of expertise and that Goodrum's opinions regarding proximate cause invade the province of the jury. (Id.)

Plaintiffs move the Court pursuant to Fed. R. Evid. 702 to strike the expert report and bar the City's expert law enforcement witness, Michael D. Lyman, from testifying. (ECF No. 145-7 at PageID 1204.) Plaintiffs argue that "Lyman's opinions invade the province of this Court and are not based on the facts of this case" and that "[n]one of Lyman's opinions are reliable because they are not based upon the facts of this case and his entire report is filled with both improper evidentiary determinations and legal conclusions." (Id.)

Plaintiffs filed their Response in Opposition to the City's Motion as to Dr. Carter on September 24, 2020. (ECF No. 154.) Plaintiffs argue that the City's argument goes to Dr.

Carter's application of facts to the methodology and not to his qualifications or the reasoning and methodology contained in his report. (ECF No. 154-5 at PageID 1494.) Plaintiffs assert that "Dr. Carter has offered opinions based upon accepted factors such as age, education, family, household consumption, ability to work and plans for future avenues of employment." (Id.)

Plaintiffs filed their Response in Opposition to the City's Motion as to Goodrum on September 25, 2020. (ECF No. 156.) Plaintiffs argue that the City's argument does not go to the reasoning or methodology contained in Goodrum's report and that the City is improperly seeking to strike Goodrum's entire report. (ECF No. 156-3 at PageID 1558.) Plaintiffs suggest that the City's "motion would be better resolved at the appropriate time – if and when any [] improper testimony is actually offered at trial." (Id.)

The City filed its Response in Opposition to Plaintiffs' Motion as to Lyman on September 25, 2020. (ECF No. 155.) The City argues that (1) facts in the record provide a sufficient factual basis for Lyman's testimony; (2) Lyman's testimony as to training is relevant; (3) under Fed. R. Evid. 704, experts are allowed to make factual conclusions that embrace an ultimate issue to be decided by the fact-finder; and (4) under Fed. R. Evid. 703, experts can base their opinions on inadmissible facts or data if the evidence is of a type reasonably relied upon by experts in the particular field. (See generally id.)

For the reasons set forth below, the City's and Plaintiffs' Motions to exclude the expert opinions and bar the experts' testimony *in toto* are **DENIED**. The Court reserves any ruling on specific objections to portions of the experts' testimony.

**I.     BACKGROUND**

  *A. Factual Background*

This action arises out of the death of Steven Gomez while he was in the custody of the Shelby County Jail following his arrest by members of the Memphis Police Department. (See generally Am. Compl., ECF No. 79.)  On June 27, 2018, Gomez was in a parked car with three other individuals when MPD officers Jose Flores, Anthony Henderson and Vincent Macaraeg, responding to a "suspicious persons" call, arrived at the scene and detained all four individuals, including Gomez. (Plaintiffs' Response to the City's Statement of Undisputed Material Facts,[1] ECF No. 190-13 ¶¶ 1–2.)  Gomez and Anthony Crutchfield were placed in the back seat of Officer Macaraeg's car. (Id. ¶ 3.)

Officer Flores approached the Officer Macaraeg's car and smelled the odor of "raw marijuana." (Id. ¶ 5.)  Officer Flores then noticed that Gomez was chewing a leafy green substance. (Id.)  Gomez was charged with "Fabricating/Tampering With Evidence. To Wit: Marijuana," "Methamphetamine Possession Felony, and "Possession of Controlled Substance. To Wit: Marijuana" and transported to the Shelby County Jail at 201 Poplar Avenue. (Id. ¶ 8; Gomez Record of Arrest, ECF No. 190-3 at PageID 2641.)

Gomez was transported to Regional One Health via non-emergency ambulance on June 28, 2018. (ECF No. 190-13 ¶¶ 16–17; see also Plaintiffs' Response to the Individual Officer Defendants' Statement of Undisputed Material Facts, ECF No. 192-12 ¶ 42.)  He was treated for ingestion of toxic amounts of methamphetamine and died on July 2, 2018. (ECF

---

[1] For purposes of this factual background, the Court will primarily cite the City's Statement of Undisputed Material Facts and the Plaintiffs' Response. (See ECF Nos. 183-2 & 190-13.)  The Court will also cite Plaintiffs' Response to the Individual Officer Defendants' Statement of Undisputed Material Facts to provide some of the details not included in the City's Motion for Summary Judgment. (See ECF No. 192-12; see also ECF No. 183.)  These facts are all undisputed according to the record and the Parties' assertions.

No. 190-13 ¶ 20.)  Methamphetamine toxicity is listed as a cause of death on Gomez's death certificate, with anoxic brain injury and cardiac arrest listed as the first cause of death.  (Id.)

After Gomez's death, the actions of Officers Flores, Henderson and Macaraeg and their supervisor Lieutenant Roosevelt Twilley were investigated.  (Id. ¶ 21.)  Lt. Twilley had been notified regarding the arrests, and it is undisputed that he directed and approved the transport of Gomez to jail and not to a hospital.  (Plaintiffs' Response to the Individual Officer Defendants' Statement of Undisputed Material Facts, ECF No. 192-12 ¶¶ 24–25.)  Lt. Twilley did not go to the scene of the arrest.  (Id. ¶ 26.)

The Memphis Police Department Processing Prisoners Policy ("the Policy") states that "[a]rresting officers should take prisoners to an emergency room/hospital if the prisoners are charged with ingesting an illegal substance (tampering with evidence), or who have told arresting officers that they have ingested illegal substances."  (ECF No. 191-6 at PageID 2837; see also ECF Nos. 190-13 ¶ 25 & 192-12 ¶ 45.)  MPD Officers do not receive specific training on the Policy.  (ECF No. 192-12 ¶ 46.)

### B. *Procedural Background and the Experts*

Plaintiff Amy Gomez filed this action on June 26, 2019.  (ECF No. 1.)  The First Amended Complaint was filed on April 20, 2020.  (ECF No. 79.)  The Court granted Plaintiff Amy Gomez's Motion for Joinder on June 30, 2020, joining Decedent Steven Gomez's daughter, Gabriella Hope Gomez, by and through her legal guardian Danielle Harthcock, as the real party in interest.  (ECF No. 106 at PageID 720.)

Plaintiffs assert the following causes of action: (1) a claim for violation of Decedent's Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 against the Defendant

Officers[2] for their failure to provide adequate medical treatment to Decedent; (2) a § 1983 Monell claim against the City of Memphis; (3) a § 1983 claim against Shelby County for violations of the Fourth, Eighth and Fourteenth Amendments; (4) a negligence claim against all Defendants; (5) a gross negligence claim against all Defendants; (6) a negligent hiring, retention, supervision and control claim as to the City of Memphis and Shelby County; (7) a state law claim for reckless disregard of the health and safety of Decedent; (8) a negligent infliction of emotional distress claim; (9) an intentional infliction of emotional distress claim; (10) vicarious liability against the City of Memphis and Shelby County; and (11) reckless indifference to Gomez's serious medical needs. (See generally ECF No. 79.)

On August 27 and August 28, 2020, the instant Motions to exclude expert reports and testimony were filed. (ECF Nos. 143–45.) The City moves to exclude the expert report and testimony of both Dr. George Carter, a forensic economist and Plaintiffs' expert as to Decedent's lost earning capacity, and Kenneth Goodrum, Plaintiffs' law enforcement expert. (ECF Nos. 143 & 144.) Plaintiffs move to exclude the expert report and testimony of Michael Lyman, the City's law enforcement expert.

Dr. Carter's report sets forth three alternative scenarios that the trier of fact could use to assess the Decedent's lost earning capacity. (ECF No. 154-2.) The first alternative, titled "Greyhound",[3] assumes that the Decedent earned a college degree and earned the national average income for the duration of his life expectancy. (Id. at PageID 1378–79.) The second alternative, titled "Some College," assumes based on his parents' educational background that the Decedent attended at least one semester of college but did not earn a degree. (Id. at

---

[2] MPD Officers Flores, Henderson and Macaraeg and Lt. Twilley.
[3] The "Greyhound" alternative assumes the applicability of the Mississippi Supreme Court case Greyhound Lines Inc. v. Gerald Sutton, 765 So.2d 1269 (Miss. 2000).

PageID 1379.) The third alternative, titled "Minimum Wage," assumes that the Decedent would have earned a minimum wage income for the duration of his life expectancy. (Id.)

Goodrum's report "offers opinions relating to: (1) Defendants' policies and practices []; (2) training and supervision []; and (3) law enforcement duties and standards." (ECF No. 156-3 at PageID 1559; see also ECF No. 156-1.) Goodrum's career history includes twenty years with the Jackson Police Department in Jackson, Mississippi, where he worked as a patrolman and later was promoted to Detective, Sergeant, and finally, Commander (Captain). (ECF No. 156-2 at PageID 1548.)

Lyman's report offers opinions relating to the same subject matter as Goodrum's; he is the City's "police practices expert." (ECF No. 155 at PageID 1505; see also ECF No. 145-1.) Lyman specifically opines that the Policy was discretionary and that the actions of the Officers and of Lt. Twilley, as well as the training provided to the Officers, were proper. (See generally ECF No. 145-1.) Lyman is "a litigation consultant in the field of police practices and procedures" and has been employed as such since August 2001. (Id. at PageID 1166.) He also worked as a criminal investigator for eleven years and as a certified police instructor for three years. (Id.)

## II.     LEGAL STANDARD

"[A] proposed expert's opinion is admissible, at the discretion of the trial court," if (1) the witness is qualified by "knowledge, skill, experience, training, or education"; (2) the witness's testimony is relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the witness's testimony is reliable. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528–29 (6th Cir. 2008) (quoting Fed. R. Evid. 702). In evaluating the reliability of expert opinion testimony, a trial court must consider

whether the testimony is based on "sufficient facts or data" and is the "product of reliable principles and methods," as well as whether the expert "has applied the principles and methods reliably to the facts of the case." See Fed. R. Evid. 702.

"The party offering the expert's testimony has the obligation to prove the expert's qualifications by a preponderance of the evidence." Burgett v. Troy-Bilt LLC, 579 F. App'x 372, 376 (6th Cir. 2014). But "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note, 2000 amend. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." In re Scrap Metal Antitrust Litig., 527 F.3d at 529–30. "[M]ere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801 (6th Cir. 2000) (quoting United States v. L.E. Cooke Co., 991 F.2d 336, 342 (6th Cir. 1993) (internal quotation marks and alterations omitted)).

## III. ANALYSIS

### A. Dr. George Carter

The City argues that Dr. Carter's report is inadmissible because it is neither based on sufficient facts or data nor is it the product of reliable principles and methods. (See generally ECF No. 143; see also Fed. R. Evid. 702(b)–(c).) Specifically, the City argues that the facts on which Dr. Carter relies were "spoon fed" to him by counsel for the Plaintiffs and that, for part of his analysis, he erroneously assumed the applicability of the Missisippi case Greyhound. (See ECF No. 143-1 at PageID 1079–88.)

Plaintiffs argue that the facts the City claims were "spoonfed" to Dr. Carter have now been supported by deposition testimony and "there is nothing improper about an expert relying on factual assumptions provided by counsel if those facts are supported in the record." (ECF No. 154-5 at PageID 1498–99 (citing McLean, 224 F.3d at 801).) Plaintiffs further argue that the Greyhound alternative is not inconsistent with the most applicable Tennessee case, Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 704 (Tenn. App. 1999). (ECF No. 154-5 at PageID 1500–02.)

The Court finds that there is no basis to exclude Dr. Carter's report or testimony *in toto*. The revised report[4] properly relies on facts in the record[5] and any arguable weaknesses in those facts go to the weight of the evidence and not its admissibility. McLean, 224 F.3d at 801. While reference to the Greyhound case itself may be improper, the testimony based in part on its analysis is the product of a reliable method. Fed. R. Evid. 702(c). Dr. Carter considered the Decedent's age, capacity and ability to work, experience, and potential future avenues of employment, as well as his marital status. (ECF No. 154-5 at PageID 1502; see also generally ECF No. 154-2.) These factors are consistent with the Tennessee case of Overstreet, which notes that "proof concerning impairment of earning capacity is, to some extent, speculative and imprecise" and that "[i]mpairment of earning capacity is not necessarily measured by an injured person's employment or salary at the time of the injury." 4 S.W.3d at 704.

The alternatives offered by Dr. Carter are each based on facts supported by the record and are the product of reliable methods. Moreover, the jury remains free to choose among

---

[4] Dr. Carter's revised report is located on the docket at ECF No. 154-2; the original report is located on the docket at ECF No. 154-1.
[5] Specifically, the revised report relies on the depositions of Amy Gomez and Danielle Mia Harthcock. (See ECF No. 154-5 at PageID 1497; see also ECF No. 154-2.)

these alternatives or to reject them entirely and calculate economic loss in some other way. The Court therefore **DENIES** the City's Motion to preclude Dr. Carter's testimony at trial and to strike his expert report.

   *B. Kenneth Goodrum*

The City argues that Goodrum's report and testimony are inadmissible because Goodrum opines as to ultimate issues of law in the case and is unqualified because he has no expertise in booking or transporting suspects. (ECF No. 144-1 at PageID 1125–28.) The City specifically objects to statements in Goodrum's report that the Officers were "embarrassed and angry" as constituting unsupported speculation that is not based on scientific methods and to the admissibility of Goodrum's opinion that the City's failure to train was a proximate cause of Decedent's death embraces an element of Plaintiffs' burden of proof. (Id. at PageID 1128–30.)

Plaintiffs argue that many, if not all, of the opinions the City objects to as impermissible legal conclusions instead "state the applicable standards of care, the proper (and improper) police techniques, the proper training and supervision required of police officers" and that such testimony is permissible. (ECF No. 156-3 at PageID 1565.) Plaintiffs also assert that Goodrum is qualified based on almost twenty-five years in law enforcement and service both as a patrolman and in supervisory positions. (Id. at PageID 1566.)

Expert witnesses "may testify about 'discrete police-practice issues' so long as the 'experts are properly credentialed and their testimony assists the trier of fact.'" Campbell v. City of Springboro, 788 F. Supp. 2d 637, 662 (S.D. Ohio 2011) (quoting Champion v. Outlook Nashville, Inc., 380 F.3d 893, 908 (6th Cir. 2004)). Goodrum's nearly twenty-five years in law enforcement and experience both as a patrolman and as a supervisor suggest that

10

he is properly credentialed. The Court will not rule otherwise until Plaintiffs have had an opportunity to lay a proper foundation through testimony.

Goodrum's opinions in his report relate to "the proper actions of individual officers in one discrete situation." Champion, 380 F.3d at 908. Whether Goodrum's conclusions constitute improper testimony as to ultimate issues of law or proper testimony as to discrete police practice issues will be more readily determinable at the time he testifies. "Whether an expert's testimony embraces an improper legal conclusion often turns on the phrasing of the question posed." Sierra v. Williamson, No. 4:10-CV-00079-TBR, 2013 WL 228333, at *7 (W.D. Ky. Jan. 22, 2013); see also Hobbs v. Legg Mason Inv. Counsel & Trust Co., N.A., Civil Action No. 3:09-CV-9-SA-DAS, 2011 WL 304421, at *5 (N.D. Miss. Jan. 25, 2011) (finding that "wholesale exclusion of [an expert's] testimony would be premature" prior to trial, even though if the expert's "testimony mirror[ed] the report, some of it [would] likely be admissible, while some [would] likely be inadmissible").

The Court therefore **DENIES** the City's Motion to preclude Goodrum's testimony at trial and to strike his expert report. The Court reserves a ruling on specific objections to Goodrum's qualifications or to his conclusions until the record is more fully developed.

C. *Michael D. Lyman*

Plaintiffs' argue that Lyman's report includes conclusions that are (1) based on unreliable facts; (2) medical opinions he is not qualified to offer; and (3) irrelevant. (See generally ECF No. 145-7.) Plaintiffs primarily object to Lyman's conclusion that the Policy is discretionary, not mandatory, and to his related conclusions. (Id. at PageID 1206–10, 1214–15.)

11

The City argues that Lyman's conclusion that the Policy is discretionary is based on facts contained in the record and is therefore admissible. (ECF No. 155 at PageID 1507–11, 1514–18.) The City further argues that Lyman's conclusions regarding the Officers' training are directly relevant to dispute Plaintiffs' "framing of the failure to train question posed in this case." (Id. at PageID 1514.)

Because Lyman's report is based on facts in the record, primarily the deposition testimony of Officer Flores and Lt. Twilley, the Court will not exclude his testimony as having an insufficient factual basis. The Court agrees with the City that the question of whether the Policy is permissive or mandatory is within the purview of the jury. (ECF No. 155 at PageID 1508.) Plaintiffs' objection to Lyman's conclusion that the Policy is discretionary goes to the weight and credibility of Lyman's testimony, not to its admissibility. McLean, 224 F.3d at 801. The same is true of Lyman's conclusion that Lt. Twilley's had discretion not to require Officer Flores to take Decedent to the hospital. (See ECF No. 145-1 at PageID 1181.)

The Court finds that the conclusions in Lyman's report are not medical opinions. Plaintiffs object to Lyman's statements that "it was reasonable for officers to conclude that Gomez had ingested only marijuana at the scene of his arrest and that he was not in need of medical attention at the time" (ECF No. 145-1 at PageID 1176) and that "[a]ssuming marijuana was the only substance Mr. Gomez ingested while in MPD custody, there was no need for medical attention prior to his being delivered to the Shelby County Jail" (Id. at PageID 1183). As to the first conclusion, Plaintiffs mischaracterize the statement as a medical opinion. Lyman does not opine that the Decedent did not need medical attention at the scene of the arrest; rather, he opines that the Officers could have reasonably concluded that medical

attention was not necessary. That conclusion is based on common knowledge available to police officers. And while the phrasing of the second conclusion could be understood as a medical conclusion, the Court will not exclude that testimony at this time. A properly phrased question could elicit that same testimony as an expert opinion based in Lyman's law enforcement expertise and not an improper medical opinion. See Torres v. Cnty. of Oakland, 758 F.2d 147, 151 (6th Cir. 1985) ("[A] more carefully phrased question could have elicited similar information and avoided the problem of testimony containing a[n improper] conclusion.").

The Court further finds that Lyman's testimony regarding the training and qualifications of the Officers is relevant. Plaintiffs' case relies in part on the argument that the City is liable for its failure to train the Officers as to the specific Policy at issue in the case. (See ECF No. 79 ¶ 64.) Lyman's testimony regarding the sufficiency of the training provided to the Officers therefore is relevant as it has a tendency to make the fact that the City failed to sufficiently train the Officers less probable. Fed. R. Evid. 401(a).

Plaintiffs' final objection to Lyman's report asserts that his opinion that the Decedent consumed methamphetamine while incarcerated at Shelby County Jail and not while in the custody of MPD officers is based on unreliable double and triple hearsay statements and improperly instructs the jury on how they should rule on a factual issue. (ECF No. 145-7 at PageID 1215–17.) But experts in a civil case are permitted to opine as to ultimate issues of fact, provided the proffered opinions are helpful to the trier of fact. See Fed. R. Evid. 701–02 & 704(a). Experts are further permitted to rely on inadmissible facts or data if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]" Fed. R. Evid. 703. Because Plaintiffs' argument fails to address whether

Lyman's conclusion would be helpful to the trier of fact and whether the inadmissible hearsay on which it is based is the sort of fact an expert in Lyman's field would reasonably rely on, the Court will not exclude the testimony at this time.

The Court finds that Lyman's report (1) is based on facts in the record; (2) does not proffer medical opinions he is unqualified to offer; and (3) is relevant.  Therefore, the Court **DENIES** Plaintiffs' Motion to strike Lyman's report and exclude his testimony.

## IV. CONCLUSION

For each of the reasons set forth above, the City's and Plaintiffs' Motions to exclude the testimony and reports of Dr. Carter, Goodrum and Lyman are **DENIED**.  The Parties may object to specific expert testimony once the record is further developed.

**SO ORDERED**, this 31st day of March, 2021.

                                                  /s/ Jon P. McCalla
                                                  JON P. McCALLA
                                                  UNITED STATES DISTRICT JUDGE