**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| AMY D. GOMEZ, ADMINISTRATRIX OF THE ESTATE OF STEVEN N. GOMEZ, DECEASED; and DANIELLE MIA HARTHCOCK, on behalf of GABRIELLA HOPE GOMEZ, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:19-cv-02412-JPM-tmp |
| CITY OF MEMPHIS, TENNESSEE; SHELBY COUNTY, TENNESSEE; OFFICER JOSE FLORES, individually and in his official capacity; OFFICER A. HENDERSON, individually and in his official capacity; OFFICER VINCENT MACARAEG, individually and in his official capacity; LIEUTENANT ROOSEVELT TWILLEY, individually and in his official capacity; and JOHN DOE DEFENDANTS 1-15, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANTS CITY OF MEMPHIS AND SHELBY COUNTY'S MOTIONS FOR SUMMARY JUDGMENT AND ORDER DENYING THE DEFENDANT OFFICERS' MOTION FOR SUMMARY JUDGMENT**

Before the Court are the Defendants' Motions for Summary Judgment, filed on October 2, 2020.  (ECF Nos. 162, 181 & 183.)  The City of Memphis, Shelby County and the Defendant Officers[1] move the Court pursuant to Fed. R. Civ. P. 56 for an order granting summary judgment in their favor on all of Plaintiffs' claims.  (See generally id.)

---

[1] The Defendant Officers are Officer Jose Flores, Officer Anthony Henderson, Officer Vincent Macaraeg and Lieutenant Roosevelt Twilley.

Plaintiffs Amy D. Gomez, Administratrix of the Estate of Steven N. Gomez, Deceased and Danielle Mia Harthcock, on behalf of Gabriella Hope Gomez (collectively "Plaintiffs") filed their Response to the City's and the County's Motions for Summary Judgment on October 30, 2020 and their Response to the Defendant Officers' Motion for Summary Judgment on November 3, 2020.  (ECF Nos. 190, 192 & 201.)  The County filed its Reply on November 6, 2020.  (ECF No. 203.)  The City and the Defendant Officers filed their Replies on November 13, 2020.  (ECF Nos. 205 & 207.)

For the reasons set forth below, the City's and the County's Motions for Summary Judgment are **GRANTED** and the Defendant Officers' Motion for Summary Judgment is **DENIED**.

## I.   BACKGROUND

### A. *Factual Background*[2]

This action arises out of the death of Steven Gomez while he was in the custody of the Shelby County Jail following his arrest by members of the Memphis Police Department ("MPD").  (See generally Am. Compl., ECF No. 79.)

### 1)   Steven Gomez's Arrest

At approximately 3:20 a.m. on June 27, 2018, MPD Officers Macaraeg, Flores, and Henderson responded to a "suspicious persons" call at a vacant residence.  (Defendant Officers' Memorandum of Material Facts ("Officers' MMF"), ECF No. 181-1 ¶ 1.)  A vehicle was backed into the driveway with Anthony Crutchfield in the driver's seat, Amanda Hill in the front passenger seat, and Elizabeth Horde and Steven Gomez in the rear passenger seats.  (Id. ¶¶ 3–4.)   All four occupants of the vehicle were detained and patted down, but not

---

[2] All the facts included in this background are undisputed according to Plaintiffs' Responses to the Defendants' Statements of Undisputed Material Facts.  (See ECF Nos. 162-2, 181-1, 183-2, 190-13, 192-12, 201-16 & 206.)

handcuffed, before being placed in the Officers' cars.  (Id. ¶¶ 6–11.)  Hill was placed in the back of Officer Flores' car, Horde was placed in the back of Officer Henderson's car, and Gomez and Crutchfield were both placed in the back of Officer Macaraeg's car.  (Id. ¶¶ 8–10.)  A small glass pipe was found on Gomez during his pat down.  (Id. ¶ 7.)

The Officers searched the vehicle.  (Id. ¶ 12.)  A blue pill bottle with a small plastic bag of marijuana and a small plastic bag of methamphetamine was found in the center cup holder.  (Id.)  More bags of the same type were found in the glove compartment.  (Id. ¶ 13.)  All the occupants of the car denied ownership of the drugs.  (Id. ¶ 14.)  Because the drugs were within reach of all the individuals, they were all charged with possession of methamphetamine and marijuana and placed in custody.  (Id.)

When the Officers[3] opened the door to Officer Macaraeg's car, there was a strong odor of marijuana.  (Id. ¶ 15.)  Gomez denied having any drugs at that time.  (Id. ¶ 16.)  An empty plastic container was found[4] on Gomez's person after he was removed from Officer Macaraeg's car.  (Id. ¶ 17.)  An additional small plastic bag was found inside Officer Macaraeg's car.  (Id. ¶ 18.)  The Officers noticed that Gomez appeared to be chewing something.  (Id. ¶ 19.)  Gomez did not respond when asked if he had eaten marijuana.  (Id. ¶ 20.)  When the Officers had Gomez open his mouth, tiny pieces of marijuana were observed in his teeth.  (Id. ¶ 21.)  Gomez was charged with "Fabricating/Tampering with Evidence, To Wit: Marijuana."  (Id. ¶ 22.)

---

[3] The City's Statement of Undisputed Facts asserts that Officer Flores was the one to smell the odor of "raw marijuana" first and Plaintiffs do not dispute that statement.  (See ECF Nos. 183-2 & 190-13 ¶ 5.)  According to Officer Henderson's deposition, both he and Officer Flores were involved with investigating that smell. (Henderson Deposition, ECF No. 165-1 at PageID 1815:28:2–24.)

[4] The Parties' dispute how the container was found: the Defendants assert that it fell out of Gomez's shirt during an additional search and the Plaintiffs assert that Gomez handed it to Officer Flores after being asked what he had done with the marijuana.  (See ECF Nos. 183-2 & 190-13 ¶ 17.)

Officer Flores called Lt. Twilley and notified him of the arrest.  (<u>Id.</u> ¶ 24.)  Lt. Twilley gave the Officers approval to transport Gomez to jail.  (<u>Id.</u> ¶ 25.)  Lt. Twilley did not go to the scene of the arrest.  (<u>Id.</u> ¶ 26.)  Officer Henderson transported Hill and Horde to Jail East.  (<u>Id.</u> ¶ 27.)  Officer Macaraeg transported Gomez and Crutchfield to the Shelby County Jail located at 201 Poplar Avenue ("the Jail").  (<u>Id.</u> ¶ 30.)  During transport, Officer Macaraeg asked both Gomez and Crutchfield if they had anything else on them, informing them that it would be "no big deal" if they did.  (<u>Id.</u> ¶ 29.)  Both denied having anything else on them.  (<u>Id.</u>)  The entirety of the incident was captured on Officers Flores, Henderson and Macaraeg's body-worn cameras, but Macaraeg's back seat in-car video camera was not working at the time of the arrests.  (<u>Id.</u> ¶ 2 & The City's Statement of Undisputed Facts ("City's SUF"), ECF No. 183-2 ¶¶ 3–4.)

2)  <u>Gomez's Intake at Shelby County Jail</u>

At the Jail's intake window, Gomez and Crutchfield were asked whether they had any injuries from their arrest, whether they had any medical devices on them, and if they'd been pepper sprayed, tased or bitten by a dog.  (Officers' MMF, ECF No. 181-1 ¶ 31.)  Both men responded "no" to each question and were able to turn in a complete circle when asked to do so.  (<u>Id.</u> ¶¶ 31–32.)  Officer Macaraeg was not asked any questions, but did provide jail personnel with the Arrest Tickets and Affidavits of Complaint for Gomez and Crutchfield. (<u>Id.</u> ¶¶ 33, 35.)  There is video footage from the booking window where this interaction took place, but the audio was not operating that night.  (City's SUF, ECF No. 183-2 ¶ 10.)  At this time, Gomez and Crutchfield were granted entry to the Jail and their custody was transferred to Shelby County.  (Officers' MMF, ECF No. 181-1 ¶ 34.)

Upon entry to the Jail, Gomez was given a medical screening.[5]  (The County's Statement of Undisputed Material Facts ("County's SUMF"), ECF No. 162-2 ¶ 8.)  Gomez denied ever having taken any drugs throughout the screening.  (Id. ¶ 9.)  Medical screenings are conducted by Wellpath employees who are contracted to perform them for the Jail.  (City's SUF, ECF No. 183-2 ¶ 12.)  Brooke Hinds performed Gomez's general intake.  (Id.)  Hinds noted on the intake form that Gomez's appearance was "Neat and Clean"[6] and that he was "Alert, oriented."  (Id. ¶ 14; see also ECF No. 163 at PageID 1724.)

3)    Regional One Health

At around 9:40 a.m. on June 28, 2018, Gomez began to appear disoriented.  (Officers' MMF, ECF No. 181-1 ¶ 38.)  Jail personnel noticed he was acting erratic and confused.  (Id. ¶ 39.)  Gomez was sent to Regional One Health at around 11:30 a.m. because he was observed "displaying unusual behavior" after stating that he "could have taken some kind of drug."  (Id. ¶ 42; see also County's SUMF, ECF No. 162-2 ¶ 14.)  Shortly after arriving at Regional One Health, Gomez was placed on life support.  (Officers' MMF, ECF No. 181-1 ¶ 43.)  He died on July 2, 2018.  (Id.)  His autopsy revealed two plastic bags in his stomach.  (County's SUMF, ECF No. 162-2 ¶ 17.)  Gomez's death certificate lists methamphetamine toxicity as a cause of death.  (City's SUF, ECF No. 183-2 ¶ 20.)  The first cause of death listed is anoxic brain injury and cardiac arrest.  (Id.)

4)    MPD Policy, Training & Investigation

The MPD Processing Prisoners Policy ("the MPD Policy") states that "[a]rresting officers should take prisoners to an emergency room/hospital if the prisoners are charged with

---

[5] Plaintiffs dispute whether this medical screening was completed "[p]er standard Jail protocol" but do not dispute that a medical screening took place.

[6] The City asserts that it was noted that Gomez was "neat and calm," but the intake paperwork itself states "Neat and Clean."  (Compare ECF No. 183-2 ¶ 14 with ECF No. 163 at PageID 1724.)

ingesting an illegal substance (tampering with evidence), or who have told arresting officers that they have ingested illegal substances."  (Officers' MMF, ECF No. 181-1 ¶ 45; see also ECF No. 191-6 at PageID 2837.)  MPD Officers do not receive specific training on this MPD Policy.  (Officers' MMF, ECF No. 181-1 ¶ 46.)  MPD recruits receive training generally in constitutional law, search and seizure, use of force, police pursuits and civil liability.  (City's SUF, ECF No. 183-2 ¶ 31.)

The MPD Inspectional Services Bureau[7] ("ISB") investigated each of the Defendant Officers after Gomez's death.  (Id. ¶ 21.)  Officers Flores and Macaraeg each had a charge of violating the Arrests General policy sustained against them.  (Id. ¶ 22.)  The same charge against Officer Henderson was dismissed.  (Id. ¶ 23.)  Lt. Twilley had a charge of neglect of duty sustained against him.  (Id. ¶ 24.)  The ISB command staff takes the position that the MPD Policy was mandatory.  (Officers' MMF, ECF No. 181-1 ¶ 52.)

### B. Procedural Background

Plaintiff Amy Gomez filed this action on June 26, 2019.  (ECF No. 1.)  The First Amended Complaint was filed on April 20, 2020.  (ECF No. 79.)  The Court granted Plaintiff Amy Gomez's Motion for Joinder on June 30, 2020, joining Decedent Steven Gomez's daughter, Gabriella Hope Gomez, by and through her legal guardian Danielle Harthcock, as the real party in interest.  (ECF No. 106 at PageID 720.)

Plaintiffs assert the following causes of action: (1) a claim for violation of Gomez's Fourth and Fourteenth Amendment Rights under 42 U.S.C. § 1983 against the Defendant Officers for their failure to provide adequate medical treatment to Gomez; (2) a § 1983 Monell claim against the City of Memphis; (3) a § 1983 claim against Shelby County for

---

[7] The City refers to ISB as the Internal Affairs Bureau, but according to the case file on the record, the Bureau's official title is "Inspectional Services Bureau."  (See generally ECF No. 147.)

violations of the Fourth, Eighth and Fourteenth Amendments; (4) a negligence claim against all Defendants; (5) a gross negligence claim against all Defendants; (6) a negligent hiring, retention, supervision and control claim as to the City of Memphis and Shelby County; (7) a state law claim for reckless disregard of the health and safety of Gomez; (7) a negligent infliction of emotional distress claim; (7) an intentional infliction of emotional distress claim; (10) vicarious liability against the City of Memphis and Shelby County; and (11) reckless indifference to Gomez's serious medical needs.  (See generally ECF No. 79.)

On October 2, 2020, the City, the County and the Defendant Officers filed Motions for Summary Judgment.  (See ECF Nos. 162, 181 & 183.)  The City argues that Plaintiffs cannot attach liability to it for the alleged constitutional violation because the City's training and supervision is adequate and, even if it were inadequate, such inadequacy is not the result of the City's deliberate indifference.  (ECF No. 183-1 at PageID 2331–38.)  Additionally, the City argues that it is immune under the Tennessee Governmental Tort Liability Act ("TGTLA") from the Plaintiffs' state law claims against it.  (Id. at PageID 2338–45.)

The County similarly asserts that Plaintiffs cannot attach liability to it for the alleged constitutional violation and that it is immune from Plaintiffs' state law claims.  (ECF No. 162-1 at PageID 1656–62.)  The County also argues that Plaintiffs cannot prove the underlying constitutional violation because the Plaintiffs "cannot show that anyone in the Jail **actually knew** that Gomez even ingested marijuana, much less [that] he also ingested the lethal drug methamphetamine."  (Id. at PageID 1653–56 (emphasis in original).)

The Defendant Officers argue that they are entitled to qualified immunity.  (ECF No. 181-2 at PageID 2276–85.)  They argue that "there is no evidence that would have alerted Defendant Officers that Steven Gomez was experiencing a serious need for medical

treatment" and that, even if Plaintiffs could demonstrate that Gomez was experiencing a serious need for medical treatment and the Defendant Officers acted with deliberate indifference to that need, Gomez's right to adequate medical treatment was not clearly established at the time of his arrest.  (Id.)  The Defendant Officers further argue that if the Court dismisses Plaintiffs' § 1983 claims against them, then either the Court should decline to exercise jurisdiction over Plaintiffs' state law claims or those claims should be dismissed because the Defendant Officers are also entitled to qualified immunity against them.  (Id. at PageID 2286–87.)

Plaintiffs filed their Response in Opposition to the City's Motion for Summary Judgment on October 30, 2020.  (ECF No. 190.)  Plaintiffs argue that Monell liability attaches to the City because "Memphis' training under the [MPD] Policy was inadequate because there simply was no training" and that "this inadequacy amounted to deliberate indifference [because] Memphis knew that death or serious injury was a foreseeable consequence from ingestion[.]"  (ECF No. 190-1 at PageID 2596–2600.)  Alternatively, Plaintiffs argue Monell liability attaches because Lt. Twilley failed to supervise the other Defendant Officers or because Lt. Twilley was vested with final policy-making authority.  (Id. at PageID 2601–04.)

As to both the City's and the County's assertions of immunity under the TGTLA from Plaintiff's state law claims, Plaintiffs argue that the civil rights exception to TGTLA's waiver of immunity from negligence does not apply to common law negligence claims.  (Id. at PageID 2604–05; see also ECF No. 201-1 at PageID 3277–79 (arguing additionally that the County is not entitled to immunity because the negligence claims relate to a failure to screen and assess and the constitutional infirmity arises out of a failure to train).)

Plaintiffs filed their Response in Opposition to the County's Motion for Summary Judgment on November 3, 2020.  (ECF No. 201.)  Plaintiffs argue that the failure of Shelby County's staff to ask Officer Macaraeg about the reason for Gomez's tampering with evidence charge "establishes a culpable mind."  (ECF No. 201-1 at PageID 3274.)  Plaintiffs assert that the County's deliberate indifference can be established through its failure to train on a Shelby County Policy that provides that detainees who are charged "with ingesting an illegal substance (Tampering with evidence), and were observed by officers ingesting what is believed to be illegal substances" have an "unacceptable condition[]" for admission to the Jail ("the County Policy").  (Id. at PageID 3266, 3274–77; see also ECF No. 183-14 at PageID 2467.)

Plaintiffs filed their Response in Opposition to the Defendant Officers' Motion for Summary Judgment on October 30, 2020.  (ECF No. 192.)  Plaintiffs argue that the Defendant Officers should objectively have known that Gomez ingested an unknown quantity of an unknown mixture of drugs, possibly including methamphetamine, and that there is sufficient evidence on the record that the Defendant Officers "drew the inference that Gomez faced some risk of serious harm."  (ECF No. 192-1 at PageID 2879–88.)

The Defendants filed their Replies on November 6, and November 13, 2020.  (ECF Nos. 203, 205 & 207.)  A Hearing was held on the City's Motion for Summary Judgment on February 4, 2021, at which the Court heard arguments from counsel for the Plaintiffs and for the City.  (ECF No. 218.)  On April 13, and April 16, 2021, pursuant to the Court's April 6, 2021 Order (ECF No. 225), Plaintiffs and the Defendant Officers filed supplemental briefs in support of their respective briefs with respect to the Defendant Officers' Motion.  (ECF Nos. 230 & 235.)

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party

cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 Fed. Appx. 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52). Summary judgment "'shall be entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury

could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012)

(quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary

judgment, the party opposing the motion must present "affirmative evidence" to support

his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty

Lobby, 477 U.S. at 247-254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.

1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a

motion for summary judgment, are not sufficient to defeat a motion for summary judgment."

Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d

890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than

rumors, conclusory allegations and subjective beliefs" are insufficient. See Mitchell, 964 F.2d

at 584-85.

## III.   ANALYSIS

Plaintiffs assert a federal claim under 42 U.S.C. § 1983 and several state law tort

claims against each Defendant. (ECF No. 79.) The Court will address Plaintiffs' federal and

state claims in turn.

### A.   *Plaintiffs' 42 U.S.C. § 1983 Claims*

"To prevail on a cause of action under [42 U.S.C.] § 1983, a plaintiff must prove '(1)

the deprivation of a right secured by the Constitution or laws of the United States (2) caused

by a person acting under the color of state law.'" Shadrick v. Hopkins Cnty., 805 F.3d 724,

736 (6th Cir. 2015) (quoting Jones v. Muskegon Cnty., 625 F.3d 935, 941 (6th Cir. 2010)).

Municipalities can be held liable for constitutional violations under § 1983 only "when

execution of a government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]"

Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978).  A municipality is not liable under § 1983 "*solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  Id. at 659 (emphasis in original).  To establish municipal liability under § 1983, "a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged."  Rayfield v. Grand Rapids, 768 F. App'x 496, 510 (6th Cir. 2019) (quoting Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (internal quotations omitted)).

Plaintiffs' § 1983 claims arise out of an alleged violation of Steven Gomez's Fourteenth Amendment[8] right to adequate medical treatment while in police custody.  (Id. ¶¶ 49–79.)  None of the Parties dispute that the Defendant Officers or any other individual employees of the City or the County involved in this case were acting under the color of law.[9] The arguments are therefore focused on whether Plaintiffs have proved a deprivation of Gomez's rights.  The Court will first address whether the Defendant Officers are entitled to qualified immunity either because they did not violate Gomez's constitutional rights or because those constitutional rights were not clearly established at the time of Gomez's arrest. The Court will then address whether Plaintiffs have established the City's or the County's liability for any constitutional violations.

---

[8] Although Plaintiffs also assert violations of Gomez's Fourth and Eighth Amendment rights in the First Amended Complaint, the arguments on summary judgment are appropriately targeted to the alleged Fourteenth Amendment violation of Gomez's right to adequate medical care.  (See generally ECF Nos. 79, 162, 181 & 183.)

[9] The Defendant Officers expressly agree that they were "at all times acting within the scope of their employment and therefore under the color of law[.]"  (ECF No. 181-2 at PageID 2276.)  To the extent that the actions of Wellpath employees at the Jail form the basis of any part of Plaintiffs' claims, "[t]he principle is well settled that private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983."  Winkler v. Madison Cnty., 893 F.3d 877, 890 (6th Cir. 2018) (citing Harrison v. Ash, 539 F.3d 510, 521 (6th Cir. 2008)).

1)      Qualified Immunity

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity applies, a court must decide (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of a defendant's alleged misconduct." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The court need not answer the questions in any particular order, but qualified immunity applies unless the answer to both questions is "yes". Id. at 231–32.

      *a.  A Genuine Dispute of Material Fact Exists as to Whether the Defendant Officers Violated Steven Gomez's Fourteenth Amendment Right to Adequate Medical Care*

Where a § 1983 claim of deliberate indifference to serious medical needs is asserted on behalf of a pretrial detainee, "the Due Process Clause of the Fourteenth Amendment is the proper starting point[.]" Phillips v. Roane Cnty., 534 F.3d 531, 539 (6th Cir. 2008).  "There are two parts to the claim, one objective, one subjective.  For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009) (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 311 (6th Cir. 2005)).  "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." Id.

i.   <u>A Genuine Dispute of Material Fact Exists as to Whether Steven Gomez Had a Sufficiently Serious Medical Need</u>

"A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment."  <u>Burgess v. Fischer</u>, 735 F.3d 462, 476 (6th Cir. 2013) (citing <u>Blackmore v. Kalamazoo Cnty.</u>, 390 F.3d 890, 897 (6th Cir. 2004)).  Plaintiffs argue that "[i]t would be obvious to a lay person that one who has ingested an unknown amount of illegal drugs, even if they were not exhibiting physical symptoms, has a serious medical need." (ECF No. 192-1 at PageID 2879–80.)

A reasonable jury could conclude that the Defendant Officers objectively should have been aware that Gomez had a serious medical need.  Officers Flores, Henderson and Macaraeg observed Gomez chewing marijuana and Officer Flores informed Lt. Twilley that they had observed Gomez chewing marijuana; the inference that Gomez swallowed that marijuana is reasonable.[10]  (Officers' MMF, ECF No. 181-1 ¶¶ 19, 21; Lt. Twilley Deposition, ECF No. 173-1 at PageID 2084:48:20-23.)  Officers Flores and Macaraeg and Lt. Twilley admitted that they are aware marijuana is commonly laced with other drugs.  (ECF Nos 194-2 at PageID 3149:8-11, 194-3 at PageID 3162:17-25 & 194-6 at PageID 13-18.)  A search of the arrestees' vehicle found both marijuana and methamphetamine.  (Officers' MMF, ECF No. 181-1 ¶¶ 12–13.)  A search of Officer Macaraeg's vehicle after the Officers observed Gomez chewing marijuana found a small plastic bag like those that had been found in the arrestees' vehicle.  (<u>Id.</u> ¶ 18.)  It is reasonable to infer from those facts that the Officers

---

[10] The Defendant Officers did not find any marijuana on the ground or in the police car.  (<u>See</u>, <u>e.g.</u>, Officer Macaraeg Deposition, ECF No. 167-1 at PageID 1891:38:4-12.)  A reasonable jury could conclude that it is not plausible that Gomez somehow tossed the marijuana rather than ingesting it.  <u>Cf.</u> <u>Weaver v. Shadoan</u>, 340 F.3d 398, 411 (6th Cir. 2003) (finding that, where the officers did not see a suspect chew, swallow or ingest illegal drugs, "[i]t [was] equally plausible that the Officer 'believed' that [the suspect] had tossed out the drugs as he fled from the police.").

should have at least suspected that Gomez swallowed methamphetamine in addition to the marijuana and investigated further.

The evidence, with all reasonable inferences drawn in Plaintiffs' favor, supports a finding that the Defendant Officers should have known that Gomez had ingested marijuana and should have suspected that Gomez had ingested other illegal drugs. The Court agrees that, on the Plaintiffs' facts, a jury could reasonably conclude that it would be obvious to a lay person that Gomez had a serious medical need based on his ingesting an unknown quantity of marijuana and based on the risk that he had consumed drugs other than marijuana.

The Defendant Officers argue that Plaintiffs cannot satisfy the objective component of the analysis because "[w]hen a plaintiff fails to exhibit any physical symptoms of drug ingestion in an arresting officer's presence, rarely will the evidence be sufficient to demonstrate a serious medical need." (ECF No. 181-2 at PageID 2280 (citing Watkins v. Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001)).) But the Defendant Officers' reliance on Watkins is misplaced because the court in Watkins did not conduct an objective analysis, relying instead on the subjective component to affirm the district court's granting of summary judgment.[11] 273 F.3d at 686 ("We find the evidence was not sufficient to lead a rational trier of fact to conclude that the officers or jailers knew Watkins needed medical attention for swallowing drugs."); see also, Bass v. Shelby Cnty., No. 07-2142-STA, 2010 WL 11597167, at *6 (W.D. Tenn. Jan. 4, 2010) ("[I]t is undisputed that the Defendant officers knew Plaintiff had consumed some type of drug since they saw him swallow a plastic bag, regardless of whether it was marijuana or cocaine. As a result, the Court finds that it would be obvious to a

---

[11] Watkins is also distinguishable from the present case because the officers in Watkins did not see the decedent swallow drugs. 273 F.3d at 686.

lay person that Plaintiff needed medical help, even if he was not physically exhibiting signs of such consumption at the present time.").

Plaintiffs point to sufficient evidence in the record to create a genuine dispute as to whether the Defendant Officers objectively should have known that Gomez had a serious medical need.

ii.   A Genuine Dispute of Material Fact Exists as to Whether the Individual
      Officers Knew of and Disregarded an Excessive Risk to Steven Gomez's
      Health or Safety

The subjective component of the claim requires more than "mere negligence; instead, it requires that the officers 'knew of and disregarded a substantial risk of serious harm to [Gomez's] health and safety.'"  Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005) (quoting Watkins, 273 F.3d at 686).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference."  Watkins, 273 F.3d at 686 (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

Defendants argue that "there is no evidence that Defendant Officers were aware or had reason to know that Gomez had ingested methamphetamine."  But there is evidence in the record that each of the Defendant Officers drew the inference that a substantial risk of harm to Gomez existed and disregarded that risk.  Officers Henderson and Macaraeg were present when Officer Flores called Lt. Twilley.  (Officer Henderson Deposition, ECF No. 165-1 at PageID 1817:35:21–1817:36:4; Officer Macaraeg Deposition, ECF No. 167-1 at PageID 1891:39:15-17.)  During that call, Officer Flores discussed Gomez's need for medical care with Lt. Twilley.  (Lt. Twilley ISB Officer Statement, ECF No. 193-1 at PageID 3052 (stating that, when Officer Flores told Lt. Twilley that Gomez had possibly ingested marijuana, Lt. Twilley asked if Gomez would need an ambulance).)  The possibility that Gomez needed

medical care because he ingested marijuana was apparently disregarded solely on the basis that Gomez was not exhibiting any symptoms.  (Id.)  Lt. Twilley was also aware, as were the Defendant Officers on the scene, that methamphetamine had been found with the arrestees. Officer Flores informed him of the charges, including possession of methamphetamine, and that the arrestees were each denying that the methamphetamine was theirs.  (ECF No. 193-1 at PageID 3052; Lt. Twilley Deposition, ECF No. 173-1 at PageID 2087:65:18-22.)

Although Gomez's lack of symptoms and refusal to admit to ingesting drugs weigh against a finding that the Defendant Officers subjectively were indifferent to Gomez's medical needs, the jury is entitled to discount the Defendant Officers' explanations that they did not suspect that Gomez ingested anything other than marijuana and that they did not consider marijuana to be a dangerous drug requiring medical care.  (See ECF No. 181-2 at PageID 2282; see also Estate of Carter, 408 F.3d at 313 (citing Johnson v. Karnes, 398 F.3d 868, 876 (6th Cir. 2005) ("[A] jury would be entitled to discount [defendant's] explanation.").)  A rational trier of fact could conclude that the Defendant Officers knew Gomez ingested marijuana, understood that such ingestion could require urgent medical treatment, drew the inference that a substantial risk of harm to Gomez existed, and disregarded such risk, even if the Defendant Officers did not know Gomez had swallowed methamphetamine.  And a reasonable jury could conclude, on the basis of those facts, that the Defendant Officers were deliberately indifferent to a serious medical need of Gomez.  See Griffith v. Franklin Cnty., 975 F.3d 554, 568 (6th Cir. 2020) (quoting Rhinehart v. Scutt, 894 F.3d 721, 738 (6th Cir. 2018)) ("A plaintiff may rely on circumstantial evidence…: A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"); Phillips, 534 F.3d at 541 ("The correctional officers may not escape liability if the evidence

showed that they merely refused to verify underlying facts that they strongly suspected to be true, or declined to confirm inferences of risk that they strongly suspected to exist." (internal quotations omitted).); Estate of Carter, 408 F.3d at 313 ("In most cases in which the defendant is alleged to have failed to provide treatment, there is no testimony about what inferences the defendant in fact drew.  Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective component.").

Plaintiffs have put forth sufficient evidence for a reasonable jury to conclude that the Defendant Officers knew that Gomez at least swallowed marijuana.  That knowledge alone distinguishes this case from other ingestion cases where the deliberate indifference standard was not satisfied.  See Weaver, 340 F.3d at 411 (finding that the evidence was insufficient to give rise to a deliberate indifference claim where the officers did not see or otherwise know that the decedent ingested illegal drugs); Watkins, 273 F.3d at 876 (finding the evidence insufficient for a rational trier of fact to conclude that the officers knew the decedent needed medical attention for swallowing drugs where none of the officers actually saw the decedent swallow drugs).  The Court therefore finds that a genuine issue of material fact exists as to whether the Defendant Officers knew of and disregarded a substantial risk of harm to Gomez.

### b.  A Pretrial Detainee's Right to Adequate Medical Care is Clearly Established

The Defendant Officers are entitled to qualified immunity even if Plaintiffs can demonstrate they violated Gomez's Fourteenth Amendment right to adequate medical care unless Plaintiffs can also demonstrate that such right was clearly established in the Sixth Circuit at the time of Gomez's arrest.  Plaintiffs cite Garretson for the proposition that Gomez's Fourteenth Amendment right to receive medical care was clearly established at the time of his arrest.  (ECF No. 192-1 at PageID 2890; see also Garretson, 407 F.3d at 798 ("[U]nder the Fourteenth Amendment, the state has a duty to provide pre-trial detainees with

adequate medical care.").)  Plaintiffs also rely on <u>Bass</u> and the Sixth Circuit's unpublished decision in <u>Border v. Trumbull Cnty. Bd. of Comm'rs</u>, 414 F. App'x 831, 839 (6th Cir. 2011), arguing that "there existed [at the time of Gomez's arrest] a body of caselaw… addressing an arrestee's constitutional right to receive medical care for a known or strongly suspected risk of overdose due to ingestion of illegal substances."  (ECF No. 230 at PageID 3689, 3693–95.)

The Defendant Officers argue that the qualified immunity analysis requires that the clearly established law be "particularized" to the facts of the case.  (ECF No. 207 at PageID 3627 (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).)  The Defendant Officers assert that Plaintiffs have not met this burden because <u>Bass</u> and <u>Border</u> are both unreported and Plaintiffs are otherwise unable to cite "controlling authority or a robust consensus of cases."  (ECF No. 207 at PageID 3627–28 (citing <u>Lattis v. Phillips</u>, 878 F.3d 541, 552 (6th Cir. 2017) & <u>Anderson</u>, 483 U.S. at 640); <u>see generally</u> ECF No. 235.)

"For a right to be 'clearly established,' '[t]he contours of that right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Campbell v. City of Springboro</u>, 700 F.3d 779, 788 (6th Cir. 2012) (quoting <u>Wheeler v. City of Lansing</u>, 660 F.3d 931, 938 (6th Cir. 2011)).  "[I]n light of preexisting law, the unlawfulness [of an official action] must be apparent."  <u>Id.</u>  "To resolve this question, th[e c]ourt 'must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits.'"  <u>Id.</u> (quoting <u>St. John v. Hickey</u>, 411 F.3d 762, 774 (6th Cir. 2005)).

The question before this Court is whether Gomez's Fourteenth Amendment right to receive medical care for a serious medical need was clearly established at the time of Gomez's arrest.  The Sixth Circuit has consistently held that "the Fourteenth Amendment right of

pretrial detainees to adequate medical care is, and has long been, clearly established." Estate of Owensby v. City of Cincinnati, 414 F.3d 596, 604 (6th Cir. 2005); see also Phillips, 534 F.3d at 545; Estate of Carter, 408 F.3d at 313; Garretson, 407 F.3d at 788. The dispute between the Parties is whether this right is established with sufficient particularity as to the facts of this case.

The Court has already found that, interpreting the facts in the light most favorable to the Plaintiffs, a reasonable jury could conclude that the Defendant Officers understood Gomez to have a serious medical need as a result of his ingesting marijuana. Whether Gomez had a serious medical need and whether the Officers were aware of that fact and disregarded a substantial risk of harm to Gomez are factual questions for the jury to decide. If the jury finds both facts in favor of the Plaintiffs, Sixth Circuit law clearly establishes that the Defendant Officers violated Gomez's Fourteenth Amendment right to adequate medical care by acting with deliberate indifference to his serious medical needs. See Watkins, 273 F.3d at 686 (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The contours of a pretrial detainee's Fourteenth Amendment right to adequate medical treatment are well-defined; officers violate that right when an arrestee objectively has a serious medical need and the officers subjectively are aware of that need and do not obtain medical care for the detainee. See Phillips, 534 F.3d 531, 539–40, 545.

That Gomez's Fourteenth Amendment right to adequate medical care was clearly established at the time of his arrest is bolstered by the Defendant Officers' testimony that they have a duty to provide medical care for an injured detainee, regardless of whether that injury was self-inflicted. (ECF Nos. 165-1 at PageID 1813, 167-1 at PageID 1885–86, 168-1 at PageID 1938–42 & 173-1 at PageID 2080–84.) The Defendant Officers understood that if

Gomez had a serious medical need and they were aware of that fact, they would be obligated to obtain medical treatment for him.  The Court finds that "the contours of [a pretrial detainee's right to adequate medical care are] sufficiently clear that a reasonable official would understand that [not obtaining medical treatment for a pretrial detainee who the officers know has a serious medical need] violates that right."  Blake v. Wright, 179 F.3d 1003, 1007 (quoting Anderson, 483 U.S. at 640).

Because the Court finds that genuine disputes of material facts preclude summary judgment on the issue of whether the Defendant Officers were deliberately indifferent to Gomez's serious medical needs and that the law as to a pretrial detainee's right to adequate medical is clearly established, the Defendant Officers' motion for summary judgment as to Plaintiffs' § 1983 claims against them is **DENIED**.

    2)    <u>Monell Liability</u>

To establish the liability of the City or the County, Plaintiffs must prove "(1) that a violation of a federal right took place, (2) that the defendants acted under the color of state law, and (3) that [the] municipality's policy or custom caused that violation to happen[.]" <u>Sweat v. Butler</u>, 90 F. Supp. 3d 773, 780 (W.D. Tenn. 2015) (citing <u>Bright v. Gallia Cnty.</u>, 753 F.3d 639, 660 (6th Cir. 2014)).  Because no Party argues that the defendants did not act under the color of state law and because the Court has already found that a genuine dispute of material fact precludes summary judgment as to whether a violation of a federal right took place, the only remaining <u>Monell</u> argument for the City is whether the City had a policy or custom that caused the underlying constitutional violation Plaintiffs assert.  The County argues both that there was no underlying constitutional violation and that the County did not have a policy or custom that caused the underlying constitutional violation.  (<u>See generally</u>

ECF No. 162-1.)  The Court will address Plaintiffs' <u>Monell</u> claims as to the City and the County separately because each claim rests on different facts.

     *a. City of Memphis*

Plaintiffs base their § 1983 claim against the City on three legal theories: (1) the City has a policy of inadequate training or supervision; (2) the City has a custom of tolerance of or acquiescence in federal rights violations; and (3) Lt. Twilley was an official with final decision making authority who ratified the Officers' illegal actions.  (ECF No. 190-1 at PageID 2594.)  Plaintiffs address the City's alleged policy of inadequate training and of inadequate supervision separately, therefore the Court will treat those arguments as separate theories as well.

     i.   <u>The City Did Not Have a Policy of Inadequate Training</u>

To establish that the City had a policy of inadequate training, Plaintiffs "must show '(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [City's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury.'"  <u>Brown v. Chapman</u>, 814 F.3d 447, 463 (6th Cir. 2016) (quoting <u>Plinton v. Cnty. of Summit</u>, 540 F.3d 459, 464 (6th Cir. 2008)).

Plaintiffs first argue that the City's training program is inadequate because the City does not directly train officers on the MPD Policy.  (ECF No. 190-1 at PageID 2597–2600.) The City argues that a failure to train its officers directly on a single one-sentence policy does not constitute inadequate training and that the training required by the State of Tennessee for certification as a law enforcement officer, on-the-job training, and roll call briefings constitute

an adequate training program.  (ECF Nos. 183-1 at PageID 2333–34 & 205 at PageID 3598–3602.)

"[T]he focus [of the inquiry] must be on the adequacy of the training program in relation to the tasks the particular officers must perform."  City of Canton v. Harris, 489 U.S. 378, 390 (1989).  The Court will not limit the focus of the inquiry to whether the City trains officers on the MPD Policy.  The City's articulation of the legal issue as "whether the City of Memphis provided adequate training to handle the arrest and booking of a person such as the Decedent with a report of an ingestion of controlled substance" (ECF No. 205 at PageID 3599) is the correct one, particularly because the ultimate issue in this case is whether Gomez's constitutional rights were violated and not whether the MPD Policy was violated.  See Bradley v. City of Ferndale, 148 F. App'x 499, 508 (6th Cir. 2005) (quoting Smith v. Freeland, 954 F.2d 343, 347 (6th Cir. 1992)) ("[T]he violation of [] policy is not in and of itself a constitutional violation under 42 U.S.C. § 1983.").

Jackson v. City of Cleveland, the case relied on by Plaintiffs, is not instructive.  925 F.3d 793, 835 (6th Cir. 2019).  In Jackson, the facts on the record demonstrated a dispute regarding the officers' training, with some testimony suggesting officers were trained on the disclosure of exculpatory evidence and some testimony suggesting officers received no training on the disclosure of exculpatory evidence.  Id.  The plaintiffs pointed to evidence in the record that tended to prove that the officers were unaware that they had an obligation to disclose exculpatory evidence.  Id.

By contrast, in the present case, there is no dispute that there was no training specifically on the MPD Policy but that there was broader training on constitutional law, search and seizure, and arrests, among other topics.  (City's SUF, ECF No. 183-2 ¶¶ 31–32.)

Additionally, the Defendant Officers each testified that they have a duty to protect a detainee in their custody and provide medical care if the detainee is injured, even if that injury is self-inflicted.  (ECF Nos. 165-1 at PageID 1813, 167-1 at PageID 1885–86, 168-1 at PageID 1938–42 & 173-1 at PageID 2080–84.)  They testified specifically that if they know a detainee has ingested an illegal substance, they should obtain medical treatment for the detainee, and if they suspect that a detainee has ingested even a less serious illegal substance, they should investigate further.  (Id.)

The deposition testimony of the Officers confirms that the City has provided the officers with adequate training on a pretrial detainee's Fourteenth Amendment right to adequate medical treatment.  Mistakes on the part of some of the individual officers do not mean that the City failed to adequately train them.  Graham v. Cnty. of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (quoting City of Canton, 489 U.S. at 391) ("The fact that individual actors may 'occasionally make mistakes… says little about the… legal basis for holding the [City] liable.'").  Since the MPD Policy's enactment, the Plaintiffs provide no evidence of any other instances of a failure to follow the MPD Policy.[12]  The Court finds that the City provided adequate training on arrest and booking procedures when there is a report or suspicion that an individual ingested a controlled substance.

Even if the training program is inadequate, though, Plaintiffs must demonstrate that the inadequacy is a result of the City's deliberate indifference.  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Jackson, 925 F.3d at 836 (quoting Bd. of Cnty. Comm'rs

---

[12] At the February 4, 2021 Hearing, the City indicated that there had been one similar incident since Gomez's death, but the Plaintiffs rely primarily on the incident in Bass, which occurred prior to the enactment of the MPD Policy, as proof of a prior incident or pattern and do not mention any other incidents of failure to follow the MPD Policy.

v. Brown, 520 U.S. 397, 410 (1997)).  "A plaintiff may meet this standard by showing either (1) 'prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it' or (2) 'evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'"  Id. (quoting Campbell, 700 F.3d at 794).  Plaintiffs' arguments are focused on the second method of demonstrating deliberate indifference.  (ECF No. 190-1 at PageID 2597.)  This method of proof "'is available in a narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'"  Winkler, 893 F.3d at 903 (internal citations omitted) (citing Shadrick, 805 F.3d at 739).

Plaintiffs' argument is that the Bass case put the City on notice that its training was inadequate and that "the failure to train under the [MPD] Policy [the City] created in response to Bass rises over and above the deliberate indifference standard."  (ECF No. 190-1 at PageID 2600.)  But the court in Bass found that the City's training was *not* inadequate and that the plaintiff "presented no evidence to show that [the d]efendant's general medical policies were insufficient to respond to the needs of detainees suffering from drug consumption."  2010 WL 11597167, at *8.  Bass could not have put the City on notice that its training was inadequate, both because the court found the training in Bass to be adequate and because the MPD Policy was enacted after Bass.  Any argument that the City's training *under the MPD Policy* is inadequate cannot predicate notice to the City regarding the training's inadequacy on an incident that occurred prior to the MPD Policy's enactment.  And there is no evidence in the record of any other unconstitutional, or even negligent, failures on the part of the City or other

MPD officers to respond to the needs of detainees suffering from drug consumption. Plaintiffs have not demonstrated that the City's inadequate training, if any, was a result of the City's deliberate indifference.  See Burgess, 735 F.3d at 478 (finding no unconstitutional custom or policy where "[p]laintiffs [did] not set forth *any* facts that there were prior instances of similar misconduct so as to show that the Board was on notice that its training and supervision… was deficient… [plaintiffs] simply have not demonstrated a pattern… as required[.]" (emphasis in original) (citation omitted)).

Because the Court finds both that the City's training on the arrest and booking of individuals known or suspected to have ingested illegal controlled substances is adequate and that, even if it were inadequate, such inadequacy would not be the result of the City's deliberate indifference, Plaintiffs' Monell claim against the City fails under a theory of inadequate training.

### ii.    The City Did Not Have a Policy of Inadequate Supervision

A policy of inadequate supervision is established in the same way as a policy of inadequate training; Plaintiffs must prove that the City's supervision was "inadequate for the tasks the [officers] were required to perform, the inadequacy resulted from [the City's] deliberate indifference, and the inadequacy actually caused, or is closely related to, [Gomez's] injury." Shadrick., 805 F.3d at 738 (citing Plinton, 540 F.3d at 464).  Plaintiffs appear to raise two arguments regarding a policy of inadequate supervision: (1) that the City failed to train its supervisors about the MPD Policy, resulting in inadequate supervision and (2) that Lt. Twilley's actions constituted a failure to supervise sufficient to establish a policy of inadequate supervision.  (ECF No. 190-1 at PageID 2602.)

Plaintiffs' first argument is a reiteration of its failure to train argument and is no more successful when disguised as a failure to supervise theory.  Plaintiffs second argument fails because "the allegation of one instance of faulty supervision, without more, is insufficient to state a plausible claim that inadequate supervision 'can justifiably be said to represent city policy.'"  Sweat v. Butler, 90 F. Supp. 3d 773, 782 – 82 (W.D. Tenn. 2015) (quoting Howard v. City of Girard, 346 F. App'x 49, 51 n.2 (6th Cir. 2009)).  If Lt. Twilley's faulty supervision of the other Defendant Officers is the basis of Plaintiffs' failure to supervise theory, then it is simply an allegation of instance of faulty supervision and does not adequately demonstrate a policy of inadequate supervision on the part of the City.

### iii.   Lt. Twilley Did Not Have Final Decision Making Authority

Municipal liability attaches for policies promulgated by an official vested with final policymaking authority for the municipality when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  Plaintiffs argue that Lt. Twilley's status as a supervisor and his discretionary authority establish him as an official vested with final decision-making authority on behalf of the City and that therefore the City is liable for his decision to direct the MPD Officers to transport Gomez to the Jail and not to a hospital.  (ECF No. 190-1 at PageID 2602–04.)

Plaintiffs arguments under this theory fail because Lt. Twilley is not an official vested with final policymaking authority for the City.  Plaintiffs arguments conflate discretionary authority with final policymaking authority.  (See ECF No. 190-1 at PageID 2603–04 (discussing Lt. Twilley's decision-making and discretionary authority without reference to

any policymaking authority).)  Discretionary authority alone is insufficient to prove that an official is vested with final policymaking authority.  See Miller v. Calhoun Cnty., 408 F.3d 803, 814 (6th Cir. 2005) (quoting Feliciano v. City of Cleveland, 988 F.2d 649, 655 (6th Cir. 1993)) (citing Pembaur, 475 U.S. at 481–82.  Plaintiffs do not provide facts demonstrating that Lt. Twilley has any authority beyond "discretion in the exercise of particular functions[.]" Pembaur, 475 U.S. at 482.

Additionally, the policies that Plaintiffs cite as support for their assertion that "the authority that Lt. Twilley exercised is consistent with the powers granted to him under Memphis' Policies and Procedures" specifically requires field supervisors to notify supervisors higher in the command authority under a number of circumstances.  (ECF Nos. 190-1 at PageID 2604 & 191-9 at PageID 2866–67.)  That policy and the ISB investigation into Lt. Twilley's actions in the Gomez case suggest that Lt. Twilley's decisions were in fact subject to review, directly contradicting Plaintiffs' assertion that he had final policymaking authority.  Tlapanco v. Elges, 969 F.3d 638, 658 (6th Cir. 2020) (citing Miller v. Calhoun Cnty., 408 F.3d 803, 813 (6th Cir. 2005)) ("[A] showing of policymaking authority typically requires specific evidence that the official's decisions were not subject to review or that the official could set policy related to broad goals.").

Because Lt. Twilley did not have final *policy*-making authority, Plaintiffs cannot attach liability to the City under a ratification theory.

iv.   The City Did Not Have a Custom of Tolerance of or Acquiescence in Federal Rights Violations

Finally, Plaintiffs fail to demonstrate that the City had a custom of tolerance of or acquiescence in federal rights violations.[13]   Jackson, 925 F.3d at 828.   Under this theory, Plaintiffs "must show: (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the 'moving force' or direct causal link in the constitutional deprivation." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005) (quoting Doe v. Claiborne Cnty., 103 F.3d 495, 508 (6th Cir. 1996)).   Plaintiffs' claim fails at the first step because, as discussed above, they have failed to demonstrate the existence of a clear and persistent pattern of City employees failing to provide adequate medical treatment to pretrial detainees known or suspected to have ingested illegal drugs.   See Burgess, 735 F.3d at 478 ("[A] custom-of-tolerance claim requires a showing that there was a pattern[.]") (citing Thomas, 398 F.3d at 433).

Because each of Plaintiffs' legal theories intended to establish that the City had a policy or custom that caused the alleged violation of a federal right fail, the City's motion for summary judgment as to Plaintiffs' § 1983 claim against it is **GRANTED**.

b.   *Shelby County*

The County argues first that Plaintiffs cannot make out a claim for deliberate indifference to a pretrial detainee's serious medical needs as to Shelby County or its

---

[13] The Court only addresses this argument briefly because Plaintiffs do not directly address it in their Response to the City's Motion for Summary Judgment apart from stating that they pursue a claim against the City under a custom-of-tolerance theory.  (See ECF No. 190-1 at PageID 2594.)

employees.  (ECF No. 162-1 at PageID 1653–56.)  The County also argues that, even if Plaintiffs can demonstrate a constitutional violation, they cannot attach liability to Shelby County through any of the <u>Monell</u> theories.  (<u>Id.</u> at PageID 1656–58.)  Plaintiffs argue that the County's deliberate indifference to Gomez's serious medical needs is established through a failure to train theory.  (ECF No. 201-1 at PageID 3272.)  Plaintiffs further assert <u>Monell</u> failure-to-train and custom-of-tolerance theories against the County.  (<u>Id.</u> at PageID 3273–77.)

      i.    <u>Plaintiffs Do Not Establish an Underlying Constitutional Violation as to Shelby County or its Employees</u>

The County argues that Plaintiffs cannot establish an underlying constitutional violation on the basis of conduct of the County or its employees because none of the County employees who treated Gomez were aware that he had ingested any drugs.  (ECF No. 162-1 at PageID 1653–56.)  Plaintiffs appear to conflate deliberate indifference in the context of the alleged underlying Fourteenth Amendment violation with deliberate indifference in the context of a failure-to-train theory under <u>Monell</u>.  (<u>See</u> ECF No. 201-1 at PageID 3271–73 (alternating between citing Fourteenth Amendment deliberate indifference law and <u>Monell</u> failure-to-train deliberate indifference law).)  The Court will address deliberate indifference in each context separately.

Plaintiffs establish the objective element of their deliberate indifference to a serious medical need claim as to the County because the County's 30(b)(6) witness testified during his deposition that ingestion of illegal substances creates a serious medical need.  (<u>Id.</u>at PageID 3272; <u>see also</u> ECF No. 201-6 at PageID 3377.)  The County does not appear to dispute that there was a serious medical need, focusing instead on the Jail personnel's lack of knowledge that Gomez ingested any drugs.  (<u>See</u> ECF Nos. 162-1 at PageID 1653–56 & 203 at PageID 3556–58.)

The County's arguments that Plaintiffs fail to establish the subjective component of the underlying constitutional violation are persuasive. "[I]t is not enough for [a] plaintiff to demonstrate a question of fact whether [municipality employees] ***should have*** known that [the decedent] had swallowed drugs." Watkins, 273 F.3d at 686 (emphasis in original). Plaintiffs must demonstrate that the County's Jail personnel *knew* that Gomez needed medical attention for swallowing drugs. Id. It is undisputed that Officer Macaraeg did not tell anyone at the Jail that Gomez had ingested marijuana or any other illegal substance. (County SUMF, ECF No. 162-2 ¶ 7.) It is also undisputed that Gomez denied throughout his intake medical screening that he had ever taken drugs, and therefore that he had ingested drugs during the course of his arrest. (Id. ¶ 9.)

Plaintiffs dispute whether Gomez displayed any symptoms of drug ingestion at the time of his intake, but their only proffered evidence regarding symptoms is Amy Gomez's deposition testimony that Gomez sounded "very anxious" when she spoke to him on June 27, 2018.[14] (Plaintiffs' Response to the County's SUMF, ECF No. 201-16 ¶ 12; see also ECF No. 201-15 at PageID 3448–50.) Plaintiffs also argue that the County Policy required the Jail personnel to investigate to determine whether Gomez's tampering with evidence charge was related to the ingestion of illegal substances. (ECF No. 201-1 at PageID 3274.) A reasonable jury, however, particularly in light of the County's 30(b)(6) witness testifying that the intake

---

[14] In their Response to the County's SUMF, Plaintiffs cite a transcript of Crutchfield's statement to the Tennessee Bureau of Investigation ("TBI") in addition to Amy Gomez's deposition testimony in support of their position disputing the County's assertion that Gomez presented as normal. (Plaintiffs' Response to the County's SUMF, ECF No. 201-16 ¶ 10.) Even drawing all inferences in favor of Plaintiffs, Crutchfield's statements do not demonstrate that Gomez was exhibiting symptoms that would have been noticeable to anyone unfamiliar with his ordinary demeanor. (ECF No. 182-2 at PageID 2320–21 (stating that Gomez told Crutchfield he felt weird, was acting like he was scared and was "spacey").) Crutchfield specifically denies that Gomez ever indicated he was feeling any extreme symptoms such as "like his chest was gonna explode." (Id. at PageID 2321.) The Court notes that Plaintiffs do not cite Crutchfield's testimony regarding any of Gomez's possible symptoms in their memorandum in opposition the County's summary judgment motion. (See ECF No. 201-1 at PageID 3261 & 3267 (citing Gomez's TBI statement only for the proposition that he did not see Gomez ingest drugs at the Jail but did see him ingest drugs during the arrest).)

staff rarely reads arrest tickets and relies on arresting officers' and the medical screenings to provide important information (ECF No. 203-1 at PageID 3570–71), could not conclude that Jail personnel read Gomez's arrest ticket and drew the inference that Gomez ingested an illegal substance even when he exhibited no physical symptoms and denied ever taking drugs.

Plaintiffs point to no evidence, direct or circumstantial, that Jail personnel drew the inference that Gomez had ingested any illegal substances and had a serious medical need as a result. Unlike Plaintiffs' evidence regarding the Defendant Officers, there is no evidence that Jail personnel were aware of the fact that Gomez had ingested marijuana or ever considered that Gomez might need to be transported to a hospital for any reason prior to his beginning to exhibit serious symptoms on June 28, 2018. In fact, Plaintiffs concede that the Jail personnel did not ask and were not told that the Defendant Officers saw Gomez ingest marijuana. (ECF No. 201-1 at PageID 3260 ("[Macaraeg] did not tell the jail about Gomez's ingestion, and the jail did not ask.").) And absent evidence that Macaraeg informed the Jail's intake staff that Gomez had ingested marijuana, the Defendant Officers' knowledge regarding that fact cannot be imputed to the Jail staff. The Court therefore finds that Plaintiffs have failed to establish an underlying constitutional violation attributable to the County or its employees.

ii.   The County Did Not Have a Policy of Inadequate Training or Supervision

Even if Plaintiffs can establish an underlying constitutional violation based on the Jail personnel's access to Gomez's arrest report, Plaintiffs must still establish the County's liability through one of the theories for establishing that a municipality has a policy or custom

that was the moving force behind the violation.  Plaintiffs assert a failure-to-train[15] and a custom-of-tolerance claim.  (ECF No. 201-1 at PageID 3270.)

Plaintiffs raise similar arguments against the County as they did against the City: the County does not train its employees directly under the County Policy and therefore its training is inadequate.  (Id. at PageID 3273.)  But the County correctly argues that, although it does not train the intake staff directly, those employees are medical personnel employed by Wellpath and assigned to the Jail through the County's contract with Wellpath.  (ECF No. 203 at PageID 3558–59.)  And Wellpath *does* train its employees staffed to the Jail on jail intake and inmate medical issues.  (Id. at PageID 3559–60.)  Both of Wellpath's employees who signed Gomez's intake paperwork testified that they were trained on prisoner intake policies; one of them specifically testified in response to questioning about the County Policy that the County Policy is consistent with their practices at the Jail.  (Id.; see also ECF Nos. 203-2 at PageID 3581–82 & 203-3 at PageID 3590.)  The Court finds that the County's training is adequate.

And again, even if the training were inadequate, Plaintiffs fail to establish that the inadequacy is due to the County's deliberate indifference.  Plaintiffs do not cite any prior instances of the Jail failing to promptly treat arrestees who had swallowed drugs, arguing instead that the lack of training alone "could lead a reasonable juror to find that the inadequacy of Shelby County's training under the [County] Policy resulted directly from its deliberate indifference."  (ECF No. 201-1 at PageID 3275.)  Although Plaintiffs also argue that "Gomez'[s] ingestion proves that the Bass incident would repeat itself," the court in Bass found that "[n]one of the evidence in the record remotely substantiates the Plaintiff's claim

---

[15] Plaintiffs reference both a failure-to-train and a failure-to-supervise theory but do not assert any distinct failure-to-supervise arguments as to the County.  (ECF No. 201-1 at PageID 3270–77.)  The Court therefore only addresses the failure-to-train theory.

that the [County] had a custom or policy of failing to promptly treat arrestees who had swallowed drugs." 2008 WL 11409454, at *4 (W.D. Tenn. Feb. 28, 2008). Bass did not find that the County or its employees violated the decedent's constitutional rights (id., at *2) and the incident in Bass therefore cannot provide the "single violation of federal rights" that forms the basis of Plaintiffs' theory that the County's deliberate indifference caused inadequate training. See Jackson, 925 F.3d at 836 (plaintiffs may demonstrate deliberate indifference through "evidence of a single violation of federal rights, accompanied by a showing that the [County] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation") (internal quotations omitted); see also Winkler, 893 F.3d at 903 ("[Plaintiff does not] explain how the quality of the medical training provided put the County on notice of the likelihood that jail personnel would respond inadequately to an inmate's medical emergency.").

Because the Court finds that the County's training for its Wellpath personnel is adequate and that, if it were inadequate, such inadequacy would not be the result of the County's deliberate indifference, the Court finds that Plaintiffs' § 1983 claims against the County fail under a failure-to-train theory of Monell liability.

### iii. The County Did Not Have a Custom of Tolerance of or Acquiescence in Federal Rights Violations

Plaintiffs' custom-of-tolerance theory fails against the County for the same reason it fails against the City. Apart from one sentence in which Plaintiffs state that they "pursue claims against Shelby County under [the existence of a custom of tolerance of or acquiescence in federal rights violations] theor[y,]" Plaintiffs do not address the theory anywhere in their Response to the County's Motion. (ECF No. 201-1 at PageID 3270.) Plaintiffs further fail to demonstrate the "existence of a clear and persistent pattern of [illegal activity.]" Thomas, 398

F.3d at 429 (quoting Doe, 103 F.3d at 508).   The only possible prior instance of similar alleged misconduct that Plaintiffs cite is the Bass case, in which the court specifically found no underlying constitutional violation as to Shelby County or its employees.   2008 WL 11409454, at *4.   Even if a single prior incident were sufficient to demonstrate a pattern for a custom-of-tolerance claim, Plaintiffs could not meet that burden.   See Wells v. City of Dearborn Heights, No. 10-CV-10543, 2014 WL 234336, at *3 (E.D. Mich. Jan. 22, 2014) ("[A] single alleged bad act is not sufficient to maintain a 'policy or custom' claim against a municipality.").   The Court therefore finds that Plaintiffs' § 1983 claim against the County fails under a custom-of-tolerance theory.

Because the Court finds both that Plaintiffs have failed to demonstrate an underlying constitutional violation attributable to the County or its employees and that Plaintiffs' § 1983 claim against the County fails under either a failure-to-train or a custom-of-tolerance theory, the County's motion for summary judgment as to Plaintiffs' § 1983 claim against it is **GRANTED**.

### B.   *Plaintiffs' State Law Claims*

Plaintiffs assert claims under Tennessee law against each of the Defendants.   (ECF No. 1.)   Specifically, Plaintiffs assert against all the Defendants (1) a negligence claim, (2) a gross negligence claim, (3) a claim for the reckless disregard of the health and safety of Gomez, (4) a negligent infliction of emotional distress claim, (5) an intentional infliction of emotional distress claim, and (6) a claim for reckless indifference to Gomez's serious medical needs. (Id.)   Additionally, Plaintiffs assert against the City and the County (1) a negligent hiring, retention, supervision and control claim and (2) a claim for vicarious liability.   The Court will

first address Plaintiffs' state law claims against the City and County, and then Plaintiffs' state law claims against the Defendant Officers.

    1)    <u>The City and County are Immune Under the Tennessee Governmental Tort Liability Act</u>

The City and the County argue that they retain immunity from each of Plaintiffs' state law claims against them.  (ECF Nos. 162-1 at PageID 1658–62 & 183-1 at PageID 2338–45.) Tenn. Code Ann. § 29-20-205 provides, in relevant part, that:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a **negligent act or omission** of any employee within the scope of his employment except if the injury arises out of:
>
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; [or]
> (2) … infliction of mental anguish… or civil rights[.]

Tenn. Code Ann. § 29-20-205 (emphasis added).  "The City retains immunity for negligence claims 'aris[ing] out of the same circumstances giving rise to [a] civil rights claim.'"  <u>Bryant v. City of Memphis</u>, 644 F. App'x 381, 384 (6th Cir. 2016) (quoting <u>Johnson v. City of Memphis</u>, 617 F.3d 864, 872 (6th Cir. 2010)).  "TGTLA's 'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution."  <u>Johnson</u>, 617 F.3d at 872 (citing <u>Hale v. Randolph</u>, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004)).

Plaintiffs "confess that the state law claims all rise out of the same operative facts that support the federal claims[,]" but argue that the Sixth Circuit has held that "Tenn. Code Ann. § 29-20-205(2) only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law[.]"  (ECF No. 190-1 at PageID 2604 (citing <u>McKenna v. City of Memphis</u>, 544 F. Supp. 415, 419 (W.D. Tenn. 1982), aff'd, 783 F.2d 560 (6th Cir. 1986)).)

As to the City, Plaintiffs do not articulate any distinction between its § 1983 claim and its asserted state law claims. The Court finds that Plaintiffs' negligence-based claims (negligence, gross negligence, and negligent infliction of emotional distress) are all subject to the TGTLA civil-rights exception. See Savage v. City of Memphis, 620 F. App'x 425, 429–30 (6th Cir. 2015) ("[The] alleged negligence arises out of the same circumstances giving rise to Plaintiffs' civil-rights claim. The district court thus correctly concluded that the City retains its immunity from Plaintiffs' negligence claims."); Tinkle v. Dyer Cnty., No. 18-01124-STA-egb, 2018 WL 6840155, at *2–3 (W.D. Tenn. Dec. 31, 2018) (internal citations omitted) ("[B]ecause Plaintiffs' negligence claims arise out of the same facts and circumstances as their civil rights claims under § 1983, they fall within the civil rights exception to the waiver of immunity set forth in the [T]GTLA and must be dismissed.... Clearly, the basis of Plaintiffs' claims in the amended complaint is that the Defendants acted with deliberate indifference toward the Decedent and his need for medical care in violation of his civil rights – claims that are properly brought under § 1983."); Lynn v. Davis, No. 2:15-0003, 2016 WL 3553029, at *6 (M.D. Tenn. June 29, 2016) (collecting cases) (barring a claim for negligence that arose out of the same circumstances and was based on the same facts as the plaintiff's deliberate indifference claims), rev'd on other grounds, No. 16-6109, 2017 WL 11408171 (6th Cir. Mar. 30, 2017).

As to the County, Plaintiffs argue that their negligence claim is distinct from their § 1983 claim because the former is based on a failure to screen and assess and the latter is based on a failure to train. (ECF No. 201-1 at PageID 3278.) But Plaintiffs again conflate deliberate indifference in the context of the underlying constitutional violation and deliberate indifference on the context of attaching liability to the County. Plaintiffs' failure-to-train

"claim" cannot succeed if Plaintiffs cannot also demonstrate the underlying constitutional violation of deliberate indifference to a serious medical need. That Plaintiffs are framing the issue differently does not change the fact that both Plaintiffs' § 1983 claim and negligence claims are based on the same set of facts in which Jail intake staff admitted Gomez to the Jail instead of transporting him to a hospital. Therefore, because Plaintiffs' negligence claims against the County arise out of the same circumstances giving rise to their § 1983 civil-rights claim, the Court finds that those claims are all subject to the TGTLA civil-rights exception.

Plaintiffs' negligent hiring, retention, supervision and control claim is barred by the TGTLA discretionary-function exception. See Tenn. Code Ann. § 29-20-205(1) (providing an exception to immunity for "[t]he exercise or performance or the failure to exercise or perform a discretionary function."); Savage, 620 F. App'x 425, 429 (internal quotations omitted) ("[T]he sorts of determinations the [Memphis Police Department] must make in how it trains and supervises its employees, staffs its departments, and investigates the alleged wrongdoing of its employees place the Plaintiffs' direct-negligence claims squarely within the discretionary function exception."); Tinkle, 2018 WL 6840155, at *3 (finding that the plaintiffs' TGTLA claims for negligent hiring, training, retention, and supervision fell within the TGTLA's exception to the waiver of immunity for discretionary acts); see also Allred v. Rodriguez, 399 F. Supp. 3d 730, 734–36 (W.D. Tenn. 2019) (collecting cases).

Plaintiffs argue that this state law claim is based on "the fact [that] personnel breached their duty to perform a proper screening when they failed to ask the proper questions" and that "the [County] Policy was mandatory and not discretionary," so a failure to follow the County Policy cannot fall within the discretionary-function exception. (ECF No. 201-1 at PageID 3279.) But the claim is being brought against the County (and the City), not against the

Defendant Officers or any individual employees of the County.  Therefore, the focus of the inquiry is on the County and the City's alleged negligent hiring, retention, supervision, and control, and the body of case law finding that such acts are planning functions and subject to the TGTLA's discretionary-function exception is robust.  See, e.g., Peatross v. City of Memphis, 2015 WL 13021901, at *8 (W.D. Tenn. Mar. 12, 2015), aff'd, 818 F.3d 233 (6th Cir. 2016) ("The sorts of determinations the MPD must make in how it screens, hires, trains and supervises its employees, and how it goes about investigating and disciplining them for any misdeeds can be better characterized as planning rather than operational functions.  As a result, the City of Memphis is entitled to governmental immunity under the discretionary function exception of the TGTLA as to Plaintiffs' charges of negligent supervision[.]").

Plaintiffs' claims for "reckless disregard of the health and safety of Gomez," "reckless indifference to Gomez's serious medical needs" and vicarious liability claim do not appear to be recognized claims under Tennessee law.[16]  Even if they were, these claims arise out of the same facts and circumstances as Plaintiffs' § 1983 claims and are therefore subject to the TGTLA's civil-rights exception.

Finally, Plaintiffs' intentional infliction of emotional distress claim is directly barred by the TGTLA.  Tenn. Code Ann. § 29-20-205(2) (providing an exception to immunity "if the injury arises out of… infliction of mental anguish"); see also Jackson v. Thomas, No. M2010-01242-COA-R3CV, 2011 WL 1049804, at *6 (Tenn. Ct. App. Mar. 23, 2011).

Because each of Plaintiffs' state law claims are subject to TGTLA exceptions, the City and the County's summary judgment motions as to Plaintiffs' state law claims against them are **GRANTED**.

---

[16] The County asserts that these claims are not recognized in Tennessee.  (ECF No. 162-1 at PageID 1662.) Plaintiffs did not respond in opposition to this specific argument and the Court has not found any statutory or common law basis for those claims.

2)      Plaintiffs' State Law Claims Remain Against the Defendant Officers

The Defendant Officers argue that the Court should dismiss Plaintiffs' state law claims against them because either (1) the Court has discretion to decline to exercise jurisdiction over supplemental state claims when it has dismissed all claims over which it has original jurisdiction or (2) qualified immunity applies equally to Tennessee state law claims as to § 1983 claims.  (ECF No. 181-2 at PageID 2286.)  Because the Court finds that the Defendant Officers are not entitled to qualified immunity as to Plaintiffs' § 1983 claims against them, the Court also finds that the Defendant Officers are not entitled to qualified immunity as to the Plaintiffs' state law claims against them.  And because the Court did not dismiss Plaintiffs' claims against the Defendant Officers over which the Court has original jurisdiction, the Court will continue to exercise supplemental jurisdiction over Plaintiffs' state law claims against the Defendant Officers.  Therefore, the Defendant Officers' summary judgment motion as to Plaintiffs' state law claims against them is **DENIED**.

## IV.      CONCLUSION

For each of the reasons set forth above, the City's and the County's Motions for Summary Judgment are **GRANTED** and the Defendant Officers' Motion for Summary Judgment is **DENIED**.  All of Plaintiffs' claims against the City and the County are hereby **DISMISSED WITH PREJUDICE**.  Plaintiffs' claims against the Defendant Officers remain in the case.

**SO ORDERED**, this 27th day of April, 2021.

 /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE